**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **GREAT SOUTHLAND LIMITED**<br>Suite 605, 45 Brisbane Rd.<br>Mooloolaba, Queensland, Australia 4557<br><br>Plaintiff,<br><br>v.<br><br>**LANDASH CORPORATION**<br>885 Sternberger Road<br>Jackson, Ohio 45640<br><br>Also Serve:<br><br>C/-Agents and Corporations, Inc., Statutory<br>Agent<br>1201 Orange Street<br>Suite 600<br>Wilmingon, Delaware 19801<br><br>and<br><br>**JASON E. ADKINS**<br>885 Sternberger Road<br>Jackson, Ohio 45640<br><br>and<br><br>**REBEKAH ADKINS**<br>885 Sternberger Road<br>Jackson, Ohio 45640<br><br>and<br><br>**MID AMERICA TIRE OF HILLSBORO,<br>INC.**<br>**DBA BEST-ONE TIRE & SERVICE OF<br>HILLSBORO**<br>970 West Main Street<br>P.O. Box 728<br>Hillsboro, Ohio 45133 | Case No.  _____<br><br><br>Judge |

Also Serve:                                    :
                                               :
Arthur S. Hein, Statutory Agent                :
5999 Meijer Drive                              :
Milford, Ohio 45150                            :
                                               :
and                                            :
                                               :
**XPO LOGISTICS, INC.**                        :
Five American Lane                             :
Greenwich, Connecticut 06831                   :
                                               :
Also Serve:                                    :
                                               :
Registered Agent Solutions, Inc.               :
1679 South Dupont Highway                      :
Suite 100                                      :
Dover, Delaware 19901                          :
                                               :
and                                            :
                                               :
**PRODUCTION TIRE COMPANY**                    :
3565 NW 74th Avenue                            :
Miami, Florida 33122                           :
                                               :
Also Serve:                                    :
                                               :
Hector S. Esquijerosa                          :
8215 SW 44th Street                            :
Miami, Florida 33155                           :
                                               :
and                                            :
                                               :
**FOX, BYRD & COMPANY, P.C.**                  :
12001 North Central Expressway                 :
Suite 500                                      :
Dallas, Texas 75243                            :
                                               :
Also Serve:                                    :
                                               :
Linda Harrison                                 :
8750 North Central Expressway                  :
Suite 950                                      :
Dallas, Texas 75231                            :
                                               :
and                                            :

2

|  | : |
|--|---|
| **KNIGHT NGUYEN INVESTMENTS** | : |
| 10101 Southwest Freeway | : |
| Suite 400 | : |
| Houston, Texas 77074 | : |
|  | : |
| and | : |
|  | : |
| **CHRISTOPHER KNIGHT LOPEZ** | : |
| 10101 Southwest Freeway | : |
| Suite 400 | : |
| Houston, Texas 77074 | : |
|  | : |
| and | : |
|  | : |
| **GIANT TYRES USA, LLC** | : |
| 153 South Bingham Street | : |
| Oak Hill, Ohio 45656 | : |
|  | : |
| Also Serve: | : |
|  | : |
| Jason Adkins | : |
| 885 Sternberger Road | : |
| Jackson, Ohio 45640 | : |
|  | : |
| and | : |
|  | : |
| **MIDWEST COAL, LLC** | : |
| 153 South Bingham Street | : |
| Oak Hill, Ohio 45656 | : |
|  | : |
| Also Serve: | : |
|  | : |
| Jason Adkins | : |
| 885 Sternberger Road | : |
| Jackson, Ohio 45640 | : |
|  | : |
| and | : |
|  | : |
| **A&B RETREADING, LLC** | : |
| c/o Jason Boggs | : |
| 13683 State Route 279 | : |
| Oak Hill, Ohio 45656 | : |
|  | : |
| and | : |
|  | : |

3

**ADKINS TIRE, LLC**                    :
c/o Jason Adkins                      :
885 Sternberger Road             :
Jackson, Ohio 45640             :
                                     :
and                              :
 :

**ELEPHANT OTR, LLC**     :
c/o Jason Adkins           :
885 Sternberger Road   :
Jackson, Ohio 45640    :
 :
and    :
 :

**REBEKAH HOLDING, LLC**   :
c/o Rebekah Adkins     :
885 Sternberger Road   :
Jackson, Ohio 45640    :
 :
Also Serve:    :
 :
The Company Corporation, Statutory Agent   :
251 Little Falls Drive   :
Wilmington, Delaware 19808   :
 :
and   :
 :

**INVESTMENT HOLDINGS, LLC**   :
c/o Joseph Fulda   :
148 Beach Ninth Street, 2D   :
Far Rockaway, NY 11691   :
 :
Also Serve:   :
 :
Jason and Rebekah Adkins   :
885 Sternberger Road   :
Jackson, Ohio 45640   :
 :
and   :
 :

**885 STERNBERGER ROAD, LLC**   :
148 Beach Ninth Street, 2D   :
Far Rockaway, NY 11691   :
 :
Also Serve:   :
 :

Joseph Fulda, Registered Agent      :
130 Upminster F      :
Deerfield, Florida 33442      :
     :
and      :
     :
**John Doe Nos. 1 – 20**      :
Addresses Unknown      :
     :
        Defendants.      :

---

### COMPLAINT
### (JURY DEMAND ENDORSED HEREON)

---

Plaintiff Great Southland Limited for its Complaint against Defendants Landash Corporation, Jason E. Adkins, Rebekah Adkins, Mid America Tire of Hillsboro, Inc. dba Best-One Tire & Service of Hillsboro, XPO Logistics, Inc., Production Tire Co., Fox, Byrd & Company, P.C., Knight Nguyen Investments, Christopher Knight Lopez, Giant Tyres USA, LLC, Midwest Coal, LLC, A&B Retreading, LLC, Adkins Tire, LLC, Elephant OTR, LLC, Rebekah Holding, LLC, Investment Holdings, LLC, and 885 Sternberger Road, LLC and John Doe Nos. 1 – 20 states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Great Southland Limited ("GSL") is a company with its principal place of business located at Suite 605, 45 Brisbane Road, Mooloolaba, Queensland, Australia, 4557.

2. Defendant Landash Corporation ("Landash") is a company registered in the state of Delaware with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45604.

3. Defendant Landash is subject to the jurisdiction of this Court as it has its principal place of business in Jackson, Ohio and engages in business in Ohio.

4. Defendant Jason E. Adkins ("Adkins") is an Ohio resident with his primary residential address being 885 Sternberger Road, Jackson, Ohio 45604 and is allegedly the sole director of Landash.

5. Defendant Rebekah Adkins ("R. Adkins") is an Ohio resident with her primary residential address being 885 Sternberger Road, Jackson, Ohio 45604.

6. Defendant Mid America Tire of Hillsboro, Inc. dba Best-One Tire & Service of Hillsboro ("Best One") is a company registered in the state of Ohio with its principal place of business at 970 West Main Street, Hillsboro, Ohio 45133.

7. Defendant Best One is subject to the jurisdiction of this Court as it has its principal place of business in Hillsboro, Ohio and engages in business in Ohio.

8. Defendant XPO Logistics, Inc. ("XPO") is a company registered in the state of Delaware with its principal place of business at Five American Lane, Greenwich, Connecticut 06831.

9. Defendant XPO is subject to the jurisdiction of this Court as it has engaged in repeated business transactions involving the alleged holding and storage of tires at its facility in Texas for Adkins and various lenders with whom Adkins has sought financing. The tires at issue in this case were sold by Best One and are allegedly being stored at XPO's facility. By agreeing to accept receipt of the tires in the purchase transaction involving two Ohio companies XPO knew or should have known that it was subject to the jurisdiction of Ohio for such transaction. Moreover, XPO alleges it has approximately 90

storage locations throughout Ohio, and as such engages in pervasive business operations in Ohio. Accordingly, XPO is subject to general and specific jurisdiction in Ohio.

10. Defendant Production Tire Company ("Production Tire") is a company registered in the state of Florida with its principal place of business at 3565 NW 74th Avenue, Miami, Florida, 33122.

11. Defendant Production Tire is subject to the jurisdiction of this Court as it has engaged in repeated business transactions involving the purchase of tires from Adkins, Landash, and/or Adkins' many other businesses in Ohio. The tires at issue in this case were sold by Best One, are allegedly being stored at XPO's facility, and were to be sold to Production Tire. By engaging in one or more purchase transactions involving various Ohio companies and an Ohio resident Production Tire knew or should have known that it was subject to the jurisdiction of Ohio for such transaction. Accordingly, Production Tire is subject to general and specific jurisdiction in Ohio.

12. Defendant Fox, Byrd & Company, P.C. ("Fox Byrd") is a company registered in the state of Texas with its principal place of business at 12011 North Central Expressway, Suite 500, Dallas, Texas 75243.

13. Defendant Fox Byrd is subject to the jurisdiction of this Court as it prepared and provided financial statements and tax returns for Adkins that were relied upon by Plaintiff in the loan agreement and purchase transactions at issue in this case. By agreeing to prepare and provide financial statements and tax returns involving two Ohio companies and an Ohio resident Fox Byrd knew or should have known that it was subject to the jurisdiction of Ohio for such business activities. Accordingly, Fox Byrd is subject to general and specific jurisdiction in Ohio.

14. Defendant Knight Nguyen Investments ("Knight Nguyen") is a company doing business in the state of Texas with its principal place of business at 10101 Southwest Freeway, Suite 400, Houston, Texas 77074.

15. Defendant Knight Nguyen is subject to the jurisdiction of this Court as it acted as Adkins' and/or Landash's investment advisor and prepared and provided, or otherwise assisted in the preparation of, financial statement for Adkins that were relied upon by Plaintiff in the loan agreement and purchase transactions at issue in this case. By agreeing to act as Adkins' and/or Landash's investment advisor and preparing and providing, or assisting in the preparation of, financial statements involving two Ohio companies and an Ohio resident Knight Nguyen knew or should have known that it was subject to the jurisdiction of Ohio for such business activities. Accordingly, Knight Nguyen is subject to general and specific jurisdiction in Ohio.

16. Defendant Christopher Knight Lopez ("Lopez") is a resident of the state of Texas with his principal place of business at 10101 Southwest Freeway, Suite 400, Houston, Texas 77074.

17. Defendant Lopez is subject to the jurisdiction of this Court as he acted as Adkins' and/or Landash's investment advisor and prepared and provided, or otherwise assisted in the preparation of, financial statements for Adkins that were relied upon by Plaintiff in the loan agreement and purchase transactions at issue in this case. By agreeing to act as Adkins' and/or Landash's investment advisor and preparing and providing, or assisting in the preparation of, financial statements involving two Ohio companies and an Ohio resident Lopez knew or should have known that he was subject to the jurisdiction of Ohio

for such business activities. Accordingly, Lopez is subject to general and specific jurisdiction in Ohio.

18. Defendant Giant Tyres USA, LLC ("Giant Tyres USA") is a company registered in the state of Ohio with its principal place of business at 153 South Bingham Street, Oak Hill, Ohio 45656.

19. Defendant Giant Tyres USA is subject to the jurisdiction of this Court as it has its principal place of business in Oak Hill, Ohio and engages in business in Ohio.

20. Defendant Midwest Coal, LLC ("Midwest Coal") is a company registered in the state of Ohio with its principal place of business at 153 South Bingham Street, Oak Hill, Ohio 45656.

21. Defendant Midwest Coal is subject to the jurisdiction of this Court as it has its principal place of business in Oak Hill, Ohio and engages in business in Ohio.

22. Defendant A&B Retreading, LLC ("A&B Retreading") is a company registered in the state of Ohio with its principal place of business at 13683 State Route 279, Oak Hill, Ohio 45656.

23. Defendant A&B Retreading is subject to the jurisdiction of this Court as it has its principal place of business in Oak Hill, Ohio and engages in business in Ohio.

24. Defendant Adkins Tire, LLC ("Adkins Tire") is a company registered in the state of Ohio with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45640.

25. Defendant Adkins Tire is subject to the jurisdiction of this Court as it has its principal place of business in Jackson, Ohio and engages in business in Ohio.

26. Upon information and belief, Defendant Elephant OTR, LLC ("Elephant OTR") is a company registered in the state of Delaware with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45640.

27. Defendant Elephant OTR is subject to the jurisdiction of this Court as it has its principal place of business in Jackson, Ohio and engages in business in Ohio.

28. Defendant Rebekah Holding, LLC ("Rebekah Holding") is a company registered in the state of Ohio with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45640.

29. Defendant Rebekah Holding is subject to the jurisdiction of this Court as it has its principal place of business in Jackson, Ohio and engages in business in Ohio.

30. Upon information and belief, Defendant Investment Holdings, LLC ("Investment Holdings") is a company doing business in the state of Ohio with its principal place of business at 885 Sternberger Road, Jackson, Ohio 45640.

31. Defendant Investment Holdings is subject to the jurisdiction of this Court as it has its principal place of business in Jackson, Ohio and engages in business and/or owns real estate or property in Ohio.

32. Defendant 885 Sternberger Road, LLC ("885 Sternberger") is a company that was registered in the state of Florida on July 18, 2017 with its principal place of business at 148 Beach 9th Street, Suite 2D, Far Rockaway, NY 11691. The registered agent of 885 Sternberger is Joseph Fulda.

33. Defendant 885 Sternberger Road, LLC is subject to the jurisdiction of this Court as it engages in business and/or owns real estate or property in Ohio.

34. Defendants John Doe Numbers 1 – 20 are other individuals and/or entities, including without limitation entities in which Adkins or R. Adkins have an interest, whose identities are not known but have engaged in acts to aide in the events set forth herein and/or have unlawfully sheltered money from creditors.

35. Jurisdiction and venue are proper in this forum pursuant to Ohio Civil Rule 3(B) and (E) as at least one (1) Defendant resides in this forum.

## STATEMENT OF FACTS

36. Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

37. In early 2016, Adkins connected with representatives of GSL to inquire about financing for certain OTR tire transactions. Adkins informed GSL that Landash was his company and acted as a tire brokerage company that connects a supplier of tires to a buyer of tires.

38. Adkins represented that he was the owner and sole director of Landash, which was the successor-in-interest to Midwest Coal.

39. The tires involved in Adkins' and Landash's business are extremely large tires typically used in mining operations and have retail prices that allegedly can approach or exceed $100,000 per tire.

40. According to Adkins, he had already negotiated a tire transaction involving over 30 tires. In order to consummate the transaction, he needed short term financing for the acquisition of the tires. He proposed that he would need a credit line supporting this (and perhaps other) transactions that would have an interest rate commensurate with what he alleged was industry standard as an incentive to induce GSL to enter into a loan agreement with Landash.

41. According to Adkins, the final sale of the tires was already a "done deal" but he needed funds to acquire the tires so he could sell the tires. Adkins informed GSL that the tires were being acquired from Best One and would be sold to Production Tire. There were two (2) anticipated purchase transactions totaling $2,400,000.00.

42. The transaction was expected to take the following form:

    a.   GSL would wire funds to Best One for the acquisition of the tires.

    b.   Best One would arrange for the tires to be delivered to XPO.

    c.   XPO would receive and hold the tires pursuant to a Warehouse Receipt.

    d.   Production Tire would pay for the tires by issuing payment for the full purchase price to GSL.

    e.   Production Tire would take possession of the tires from XPO once GSL received full payment from Production Tire.

    f.   GSL would apply a credit to the outstanding loan amount to pay for the principal and interest owed to it by Landash.

    g.   GSL would issue payment to Landash in the amount of the Production Tire purchase price less the principal and interest balance (and other costs or expenses owed to GSL) retained by GSL.

43. In order to induce GSL into entering into the loan agreement (and related loan documents), Adkins provided certain financial records for Adkins, Landash, and Midwest Coal, the alleged predecessor company to Landash.

44. Adkins provided GSL with his 2014 federal tax returns, which were jointly filed with R. Adkins, his wife. The tax returns reflect adjusted gross income of $4,868,642 and net,

after tax, income of $2,808,255. The tax returns allegedly were prepared by Kerry Johnson, CPA at Fox Byrd.

45. The tax returns provided to GSL do not include any reference to any income earned by R. Adkins and do not include any indication that R. Adkins had any interest in any business ventures, such as Rebekah Holdings of which she is believed to be a member.

46. It appears that the tax returns provided by Adkins may not be accurate tax returns and may not have been the tax returns he filed with the IRS. Adkins may have provided fictitious tax returns to induce GSL into the loan agreement.

47. Adkins also provided GSL with Fox Byrd's Independent Accountant's Compilation Report ("Compilation Report") of Midwest Coal for the years ending December 31, 2014 and 2013. Exhibit 1.

48. The Compilation Report appears to be inconsistent with financial records allegedly provided to other financial institutions in other loan matters. By way of example, and not by way of limitation, in a lawsuit filed by Abington Emerson Capital, LLC ("Abington") against Landash and Adkins, filed on February 17, 2017, Abington alleged it received a Midwest Coal Income Statement for tax year 2014, which indicates it is as of December 1, 2014. In that Income Statement it reflects Midwest Coal's gross income of $19,560,000.00 along with "Tire Purchases" totaling $16,780,000.00. The Compilation Report reflects cost of goods sold (i.e. tire purchases) of $15,087,800.00 for all of 2014. Thus, the documents do not appear to be consistent and as such indicate that one or more of them have been fabricated.

49. Adkins also provided GSL with a Profit & Loss Statement ("P&L") from January 1, 2015 through September 1, 2015 and Balance Sheet as of September 1, 2015.[1] Exhibit 2. The P&L and Balance Sheet appear to have been fabricated with false information. For example, and not by way of limitation, the balance sheet reflects only one (1) current liability of a $500,000 short term note payable as of September 1, 2015. GSL has recently learned of the Abington lawsuit in which Abington appears to have leant Landash $1,523,000.00 on or about March 4, 2015. The Abington loan is alleged to have been in default prior to September 1, 2015; however, it is nowhere reflected in the P&L or Balance Sheet. Nor is the loan reflected in any financial document provided by Adkins to GSL.

50. Adkins also provided GSL with the Landash Corporation Financial Statements ("Financial Statements") that were prepared by Knight Nguyen, which is dated December 31, 2015. As with the other financial records provided by Adkins, there is no reference to the Abington loan. Accordingly, it appears the Financial Statements are false.

51. The Abington loan is not the only loan not disclosed by Adkins to GSL prior to entering into the Loan Agreement. Adkins did not disclose, and the financial records provided by Adkins do not reference, a lawsuit filed by Pro-Logistics Forwarding Ltd. that included Giant Tyres USA, Midwest Coal, A&B Retreading, Adkins Tire, and Adkins as Defendants in a matter that ultimately was concluded by way of a settlement. Adkins did not disclose, and the financial records provided do not reference, a lawsuit involving Star Funding, Inc., which appears to include a similar scheme by which tires are allegedly

---

[1] The P&L and Balance Sheet refer to Midwest Coal. However, Midwest Coal is believed to have ceased business operations effective December 31, 2015 and Landash assumed all Midwest Coal operations as successor-in-interest beginning January 1, 2015. As such, it appears the P&L and Balance Sheet actually pertain to Landash rather than Midwest Coal.

14

purchased from a supplier like Best One (and may have been Best One) and the alleged purchaser (which may have been Production Tire) fails to consummate the transactions resulting in a default of a loan in excess of $1,000,000.

52. Before entering into the Loan Agreement with GSL, Adkins and his various entities had entered into similar loans involving similar tire transaction schemes with at least four (4) other lenders on short term loans all of which he defaulted on when the ultimate purchaser of the tires failed to make the purchase.

53. On or about March 9, 2016, Timothy Irish and Adkins executed a Loan Agreement on behalf of Landash in the principal amount of $3,500,000, plus interest (the "Loan"), which evidenced a business loan extended by GSL to Landash. A true and accurate copy of the original Loan Agreement is attached hereto as Exhibit 3.

54. On or about March 9, 2016, Adkins executed a Guarantee and Indemnity Agreement, which evidenced an obligation by Adkins to guarantee payment of the Loan and performance of the Loan Agreement. A true and accurate copy of the original Guarantee and Indemnity Agreement is attached hereto as Exhibit 4.

55. On or about March 9, 2016, Timothy Irish and Adkins executed a General and Specific Security Agreement on behalf of Landash, which provides for a purchase money security interest as well as a security interest in all real property and personal property belonging to Landash. A true and accurate copy of the original General and Specific Security Agreement is attached hereto as Exhibit 5.

56. Landash was obligated to make monthly interest payments on the outstanding amount of the Loan until such time as the Loan term expired and full repayment of all outstanding principal, interest, and other fees or costs was due. Exhibit 3.

57. Adkins guaranteed full payment and performance by Landash of the Loan Agreement. If Landash filed to pay or perform as required by the Loan Agreement, Adkins was obligated to indemnify GSL for all principal, interest, fees, costs, and attorney fees associated with the collection of the debt. Exhibit 4.

58. On or about March 11, 2016, GSL made an initial advance of $1,170,000.00, which was wired to Best One for the purchase of tires to be stored at XPO. Statement of Account attached as Exhibit 6; Purchase Order and Wire Confirmation attached as Exhibit 7.

59. On or about March 15, 2016, GSL made a second advance of $1,230,000.00, which was wired to Best One for the purchase of tires to be stored at XPO. Exhibit 6; Purchase Order and Wire Confirmation attached as Exhibit 8.

60. XPO executed a Non-Negotiable Warehouse Receipt ("Warehouse Receipt") on April 4, 2016 wherein it allegedly received the 36 tires sold by Best One per the Purchase Orders. Exhibit 9.

61. On November 23, 2016, Vecron Exim, Ltd. ("Vecron") filed a lawsuit against Landash, Adkins, and Best One alleging default of a loan agreement in which the facts likely mirror the GSL transaction. In that lawsuit, it is alleged that Vecron entered into a loan agreement for $2,400,000 with Landash on March 4, 2016 – **5 days prior to the GSL loan agreement,** which resulted in a $2,400,000 loan to Landash for the purchase of tires from Best One. Based on the loan from Vecron to Landash for the tire purchase, it appears the entire GSL loan transaction was a scam.

62. After GSL wired funds to Best One, the tires were allegedly sent to XPO for interim storage until Production Tire could arrange for the payment and subsequent pick up of the

tires. However, Production Tire neglected to consummate the purchase transaction for the tires. As such, it made no payment to GSL.

63. After the failed consummation of the Production Tire transaction, Landash failed to make the required monthly interest payments. Instead, Landash made sporadic, partial interest payments from June 22, 2016 until January 20, 2017 at which time Landash ceased making any more payments. Exhibit 6.

64. Landash has never made any payments toward the outstanding principal balance on the account.

65. On February 9, 2017, GSL, by and through counsel, sent a Notice of Default and Demand for Payment to counsel for Defendants. Exhibit 10. The Notice of Default and Demand for Payment pertains to the obligations of the Defendants under the terms of the Loan Agreement and the Guarantee and Indemnity Agreement.

66. Defendants have not responded to the Notice of Default and Demand for Payment. Nor have Defendants made any additional payments as required by the Loan Agreement and the Guarantee and Indemnity Agreement.

67. On July 24, 2017, a brief was filed by Abington in its lawsuit against Adkins and Landash in which it is alleged that XPO has ceased maintaining an office at its Houston facility, it has tendered possession of the facility (and presumably any tires alleged stored at the facility) to Roadmaster Trucking, access to tires by secured creditors has become limited at the facility, creditors have been unable to confirm the presence of the tires, and some tires evince signs that serial numbers were "rubbed, scratched, and/or filed off".

68. In the lawsuit captioned *Pro-Logistics Forwarding Ltd v. Robinson Tire Co.*, S.D. Miss. Case No. 2:13-cv-00083, Adkins and his various entities were sued on allegations of a

similar tire transaction wherein the buyer of the tires ordered specified tires with serial numbers through Adkins. Although tires were ultimately provided to the buyer, it is alleged that the serial numbers were scratched off or missing or never on the tire in the first instance. It was further alleged that the tires may have been retread tires obtained through Adkins' A&B Retreading business.

69. GSL has spoken with a purported representative of Production Tire to discuss their failed consummation of the underlying purchase transaction, which was the impetus of the Loan Agreement from GSL to Landash. GSL was informed that Production Tire, which itself is alleged to be a tire broker, lost the sale from its customer because Adkins had previously sold Production Tire tires without serial numbers.

70. To date, GSL has been unable to confirm that the tires sold by Best One in this transaction with serial numbers identified on the purchase order exist and are being stored at XPO's facility.

71. Upon information and belief, Adkins, personally and by and through his various entities (including without limitation Landash, Giant Tyres USA, Midwest Coal, A&B Retreading, and Adkins Tire), has conspired and worked in concert with Best One, Production Tire, and XPO to create fraudulent paper transactions that has induced various lenders, including GSL, into entering into short term loans to enable the consummation of the paper transactions, which is known by Best One, Adkins, Production Tire, and XPO as never going to occur.

72. Upon information and belief, Adkins, personally and by and through his various entities (including without limitation Landash, Giant Tyres USA, Midwest Coal, A&B Retreading, and Adkins Tire), has conspired and worked in concert with Fox Byrd,

Knight Nguyen, and Lopez to create false and/or misleading financial records to induce lenders, including GSL, to enter into short term loans to enable Adkins and his entities to perpetrate the fraudulent transactions.

73. Adkins and R. Adkins currently reside at 885 Sternberger Road, Jackson, Ohio (the "Residence"). They have lived there since approximately June, 2012 when the Residence was acquired by Rebekah Holding for $134,500.00, which is the alleged purchase price identified on the Jackson County Auditor's website.

74. On or about November 16, 2016, Adkins had William Harris, Jr. of Harris Appraisal Services, Inc. prepare an appraisal of the Residence for GSL, which was in an effort to induce GSL to lend more money so it could consummate more presumably fraudulent transactions. The appraisal of the Residence was in the amount of $3,500,000.00, which is perhaps not ironically the exact same amount of the face value of the GSL Loan to Landash.

75. On or about May 30, 2017, Rebekah Holding allegedly transferred ownership in the Residence to Investment Holdings, which pursuant to the Jackson County Auditor's website was pursuant to a sale in the amount of $544,000.00. Upon information and belief, this transaction was not an arms-length transaction. Notwithstanding the alleged transfer of ownership, the Adkins still reside at the Residence.

76. Upon information and belief, Adkins has conspired and worked in concert with his wife R. Adkins, to perpetrate fraudulent schemes to obtain loans from various lending institutions for tire transactions that do not exist except on paper. Adkins and R. Adkins have received funds through this fraudulent scheme and have funneled money into one or

more limited liability companies in an effort to shelter the money from creditors. These companies include, but are not limited to, Rebekah Holding and Investment Holdings.

## COUNT I
## Judgment on Loan Agreement

77. Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

78. Pursuant to the terms of the Loan Agreement, Landash was required to make monthly interest payments after payment of the $2,400,000 advances made by GSL. Exhibit 3.

79. Landash failed to make the monthly interest payments as required by the Loan Agreement.

80. Non-payment of any amount(s) owed to GSL is an Event of Default pursuant to the terms of the Loan Agreement. Exhibit 3.

81. Landash has engaged in actions, or failed to take action when required, which constitutes additional Events of Default pursuant to the terms of the Loan Agreement. Exhibit 3. The additional Events of Default by Landash include, but are not limited to:

   a. Failure by Defendants to provide required financial documents;

   b. Failure by Defendants to use the loan funds for the authorized purpose;

   c. Defendants' actual (or threatened) insolvency, which includes threats of bankruptcy;

   d. Wrongful termination of and/or non-registration of GSL's security interest;

   e. Statements, representations, and warranties made by Defendants have been incorrect and/or misleading;

   f. Failure by Defendants to fully and punctually comply with all required undertakings set forth in the Loan Agreement, Guarantee and Indemnity

Agreement, General and Specific Security Agreement, and the debt associated therewith; and/or

    g.  Failure by Defendants to respond to the satisfaction of GSL.

82. Upon one or more Event of Default, the debt (including, without limitation, all principal, interest, fees, costs, administrative costs, and attorney fees) shall become immediately due and payable upon GSL's written demand. Exhibit 3.

83. Based on Defendants' default of the Loan Agreement, Guarantee and Indemnity Agreement, and General and Specific Security Agreement counsel for GSL sent a Notice of Default and Demand for Repayment to Defendants' counsel on February 9, 2017. Exhibit 10.

84. Based on the Events of Default, non-exhaustive examples of which are set forth herein above, and the Notice of Default and Demand for Payment, the entire loan has been accelerated and payment of all principal, interest, fees, costs and attorney fees are immediately due and owing to GSL.

85. Based on the Events of Default, non-exhaustive examples of which are set forth herein above, and the Notice of Default and Demand for Payment, GSL is entitled to pursue any and all remedies set forth within the General and Specific Security Agreement.

86. Based on the Events of Default, non-exhaustive examples of which are set forth herein above, and the Notice of Default and Demand for Payment, GSL is entitled to pursue any and all remedies against Adkins pursuant to the Loan Agreement and/or the Guarantee and Indemnity Agreement.

87. Therefore, GSL is entitled to a money judgment against Landash in the principal amount of $2,400,00.00, together with interest, administrative costs, finance charges, pre- and

post- judgment interest, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

**COUNT II**
**Judgment on Loan Guarantee and Indemnity**

88. Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

89. GSL is the holder of the Guarantee and Indemnity Agreement executed by Defendant Adkins and is entitled to enforce said Guarantee and Indemnity Agreement.

90. The obligation underlying the Guarantee and Indemnity Agreement is not a consumer loan or a consumer transaction.

91. Defendant Adkins has unconditionally and absolutely guaranteed to GSL, without limitation, Defendant Landash's satisfaction of all of its obligations under the terms of the Loan Agreement.

92. Defendant Landash is in breach of the terms of the Loan Agreement, including without limitation those set forth above and incorporated by reference herein.

93. There is now due and owing on the Loan Agreement the principal amount of $2,400,000.00, together with interest, administrative costs, finance charges, pre- and post- judgment interest, attorney fees, and court and other costs, for which GSL now demands judgment against Defendants Landash and Adkins.

94. Therefore, GSL is entitled to a money judgment against Adkins in the principal amount of $2,400,00.00, together with interest, administrative costs, finance charges, pre- and post- judgment interest, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

**COUNT III**
**Foreclosure of Security Agreement**

95. Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

96. In order to secure the obligations of the Loan Agreement, Defendant Landash provided GSL with a security interest in certain collateral as further described in the General and Specific Security Agreement, which included, among other things, a first and best lien on Landash's "PPS Property," which is defined as "all property over which a Transaction Party [Landash or Adkins] is legally capable under the UCC of granting a Security Interest." Exhibit 3.

97. GSL holds a properly perfected security interest by virtue of UCC Financing Statements filed with the Texas Secretary of State and Delaware Secretary of State.

98. Naming Landash as the indebted organization for the security interest, GSL filed Financing Statements with the Texas Secretary of State On April 7, 2016 in File #16-0011181423, which was amended on April 12, 2016 in File #16-00116672. Exhibit 11.

99. Naming Landash as the indebted organization for the security interest, GSL filed Financing Statements with the Delaware Secretary of State On April 6, 2016 in File #2016 2046124, which was amended on April 11, 2016 in File #2016 2132999. Exhibit 12.

100. The Financing Statements filed against Landash in Texas and Delaware was terminated without GSL's knowledge or consent on or about August 4, 2016. Upon learning of the improper termination, GSL filed Financing Statements in Texas and Delaware on November 10, 2016 in File #16-0037194536 and 2016 6951584, respectively. Exhibit 13. These Financing Statements have not been terminated.

101. Naming XPO as the indebted organization for the security interest, GSL filed Financing Statements with the Texas Secretary of State On April 7, 2016 in File #16-

0011181544, which was amended on April 12, 2016 in File #16-00116671. Exhibit 14. These Financing Statements have not been terminated.

102.    Naming XPO as the indebted organization for the security interest, GSL filed Financing Statements with the Delaware Secretary of State On April 6, 2016 in File #2016 2045969, which was amended on April 11, 2016 in File #2016 2132809. Exhibit 15. These Financing Statements have not been terminated.

103.    As a result of the breaches and defaults by Defendant Landash, GSL has the right of immediate possession and resale of the collateral, which should be sold pursuant to applicable law.

## COUNT IV
### Fraud

104.    Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

105.    Since 2012, at least, Defendant Adkins, working in concert with all other Defendants, has engaged in the above described tire scheme to defraud numerous creditors, including GSL, of millions (potentially tens of millions) of dollars.

106.    As with many sophisticated corporate fraud schemes, there was some element of apparent "legitimacy" behind the transactions to induce the victims, various lending institutions, into entering into multi-million dollar loans. For example, Best One is a business that sells the large, industrial tires and has a long standing business operation; XPO is an international organization that provides logistics for shipment and storage of goods like the tires at issue in this case; and Production Tire appears to have a legitimate tire brokerage business connecting buyers and sellers of tires. Adkins (and Landash) worked with these entities to provide lenders with sufficient confidence that Adkins was

a legitimate tire broker, which could be theoretically supported with evidence of prior sales (which likely were fictitious transactions as well).

107.     Given the fact that there were several prior failed tire transactions prior to GSL's Loan Agreement with Landash, Best One, XPO, and Production Tire, with the assistance and involvement of Adkins, knew or acted with utter disregard and recklessness about the fact that the entire transaction supporting the GSL Loan Agreement was yet another fraudulent transaction designed to fleece another lending institution of millions of dollars.

108.     Adkins, Landash, Best One, XPO, and Production Tire knew that GSL was relying on their representations and statements that the underlying transaction was a legitimate transaction.

109.     Production Tire made false statements to GSL regarding the reason the "buyer" of the tires backed out of the deal, which evinces their knowledge that the underlying transaction was a fictitious transaction. The alleged reason for the failed transaction involved the alleged missing serial numbers on tires from an earlier transaction. Upon information and belief, Production Tire was not involved in any such earlier transaction but rather was referring to other transactions (perhaps the one underlying the Pro-Logistics Forwarding litigation that did not involve Production Tire) as the basis for the "buyer's" rejection of the current transaction. Accordingly, this statement by Production Tire was false and establishes that it knew the GSL Loan Agreement was entered into under false pretenses.

110.     Fox Byrd, Knight Nguyen, and Lopez had a duty to disclose accurate financial information about Adkins, Landash, and Midwest Coal to GSL. With the assistance and

involvement of Adkins, the Defendants failed to disclose material facts concerning such financial information.

111.     Fox Byrd, Knight Nguyen, and Lopez provided false and fraudulent opinions regarding Adkins', Landash's, and Midwest Coal's financial reports and financial information. With the assistance and involvement of Adkins, the Defendants knew that the financial information was false or they gave utter disregard and recklessness as to the financial information's falsity.

112.     In all instances of fraud, the Defendants engaged in such actions with the intent of misleading GSL into relying upon the information.

113.     In all instances of fraud, GSL was justified in relying on information provided, or not provided, and did so rely on the information, or lack of information.

114.     The information provided, or not provided, by Defendants was material to the transaction and induced GSL into entering into the Loan Agreement with Landash.

115.     Therefore, GSL is entitled to a money judgment against Defendants, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

**COUNT V**
**Civil Conspiracy**

116.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

117.     Defendants engaged in a civil conspiracy to induce various financial institutions, including GSL, to enter into loan agreements for millions of dollars.

118.     Defendants knew or acted with utter disregard or recklessness of the falsity of the information that the tire transactions and financial information supporting the various loan agreements, including the GSL Loan Agreement with Landash, were fictitious.

119.     Defendants acted with purpose and/or intent, and without a reasonable excuse, to engage in wrongful and/or illegal conduct to further the civil conspiracy and to defraud multiple financial institutions, including GSL.

120.     Therefore, GSL is entitled to a money judgment against Defendants, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT VI
## RICO

121.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

122.     Defendants engaged in the affairs of an enterprise to defraud financial institutions, including GSL, of millions of dollars over a period of multiple years.

123.     Defendants participated directly or indirectly in the affairs of the enterprise to defraud financial institutions, including GSL.

124.     The Defendants actions in the enterprise constitute a pattern of corrupt activity under Ohio law.

125.     Defendants conduct constitutes "racketeering activity" as defined in 18 U.S.C. §1961(1)(B) and includes, without limitation, mail fraud pursuant to 18 U.S.C. §1341; wire fraud pursuant to 18 U.S.C. §1343; bank fraud pursuant to 18 U.S.C. §1344; and/or money laundering pursuant to 18 U.S.C. §1956.

126.     Defendants conduct constitutes "corrupt activity" pursuant to Ohio R.C. §2923.31(I)(2) and includes, without limitation, money laundering pursuant to Ohio R.C. §1315.55 and telecommunications fraud pursuant to Ohio R.C. §2913.05.

127.     Therefore, GSL is entitled to a money judgment against Defendants, jointly and severally, in the amount of $2,400,00.00, treble damages, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT VII
## Breach of Contract

128.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

129.     XPO entered into a contract to perform certain services. Namely, it was to receive, store, and maintain the tires until directed otherwise by GSL. XPO received compensation for storage fees associated with the tires.

130.     Pursuant to the Warehouse Receipt, XPO agreed to hold the tires in storage "for the account of [GSL]." Exhibit 10.

131.     XPO further agreed "[d]elivery will be made to the person designed upon order of [GSL]." Exhibit 10.

132.     Upon information and belief, some or all of the secured tires are not being held by XPO at their facility in breach of this agreement.

133.     Upon information and belief, the facility where the tires are or were stored is no longer an XPO facility and as such XPO has effectively tendered possession of the tires to a third party in breach of the agreement.

134.     GSL has performed all of its obligations owed to XPO.

135.     Therefore, GSL is entitled to a money judgment against Defendant XPO in the amount of $2,400,00.00, pre- and post- judgment interest, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT VIII
### Negligence

136.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

137.     Fox Byrd, Knight Nguyen, and Lopez were negligent in providing the financial statements and/or other financial information upon which GSL relied in entering into the Loan Agreement with Landash.

138.     Fox Byrd, Knight Nguyen, and Lopez knew or reasonably should have known that financial institutions, including GSL, would rely on the financial statements and/or other financial information they prepared and/or provided.

139.     Fox Byrd, Knight Nguyen, and Lopez knew or reasonably should have known that the financial statements and/or other financial information were false or otherwise inaccurate.

140.     Therefore, GSL is entitled to a money judgment against Defendants Fox Byrd, Knight Nguyen, and Lopez, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT IX
### Intentional Misrepresentation

141.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

142.     Defendants intentionally misrepresented facts and information, or knowingly concealed facts or information when they had a duty to disclose such information, that GSL detrimentally relied upon in entering into the Loan Agreement with Landash.

143.     Defendants knew, or acted with utter disregard and recklessness regarding the falsity of the information, that the tire transactions and/or financial documents and other financial information were false or fictitious.

144.     Therefore, GSL is entitled to a money judgment against Defendants, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

### COUNT X
### Negligent Misrepresentation

145.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

146.     Defendants negligently misrepresented facts and information, or knowingly concealed facts or information when they had a duty to disclose such information, that GSL detrimentally relied upon in entering into the Loan Agreement with Landash.

147.     Defendants knew, or reasonably should have known, that the tire transactions and/or financial documents and other financial information were false or fictitious.

148.     Therefore, GSL is entitled to a money judgment against Defendants, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT XI
## Fraud (Part 2) and Piercing the Veil

149.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

150.     Adkins and/or R. Adkins have formed various entities including Landash, Giant Tyres USA, Midwest Coal, A&B Retreading, Adkins Tire, Rebekah Holding, Investment Holdings, 885 Sternberger, and/or Elephant OTR (collectively the "Adkins' Companies") for the purpose of defrauding financial institutions, including GSL, and sheltering the ill-gotten gains from fictitious transactions.

151.     For example, and not by way of limitation, Adkins formed Giant Tyres USA and has alleged, in an Affidavit filed in the Abington case, "I am the 100% owner of Giant Tyre (sic) USA, LLC and have actually never even conducted any business with this entity."

152.     Adkins and/or R. Adkins have used the Adkins Companies as tools to perpetrate the fraudulent scheme by taking loans on fictitious transactions and defaulting on those transactions leaving only a shell of a company with no assets to collect against. Thereafter, Adkins would form a new company and take out more loans and default on those loans leaving only a shell of a company with no assets to collect against. This process has repeated on several occasions. In each instance, Giant Tyres USA, Midwest Coal, Landash, A&B Retreading, and Adkins Tires is left with no assets to collect against.

153.     While Adkins personally guarantees each loan, and he provides alleged tax returns (which are likely fictitious), there is no record of Adkins actually having any assets in his name. Upon information and belief, he and R. Adkins have formed Rebekah Holding and Investment Holdings as holding companies for all assets he has wrongly

31

acquired over the years. For example, and not by way of limitation, the Residence was titled to Rebekah Holding, which was transferred on or about March 20, 2017 to Investment Holdings for approximately 1/6[th] of the appraised value of the Residence (if the appraisal is to be believed). The title to the Residence was then transferred back to Rebekah Holding on or about May 22, 2017 then back to Investment Holdings a second time on or about June 14, 2017. All of this happened when several lawsuits were being filed against Adkins by various lending institutions. Yet while the title to the Residence was changing hands, the Adkins family was not leaving. They are staying in the Residence, which is titled to Investment Holdings, which appears to be operating out of the state of New York with no known ties to Ohio (other than its purported ownership of the Residence).

154. On July 18, 2017, 885 Sternberger was registered as a limited liability company doing business in Florida. 885 Sternberger has a mailing address as 148 Beach 9th Street, Suite 2D, Far Rockaway, New York, which is the same address as that for Investment Holdings. The registered agent is identified as Joseph Fulda, who executed the deed transfer for the Residence from Investment Holdings to Rebekah Holding on May 18, 2017. Now, Fulda registers a company in Florida where the name of the company is the address of the Residence.

155. Adkins and R. Adkins use Giant Tyres USA, Midwest Coal, Landash, A&B Retreading, and Adkins Tires to take out multi-million dollar loans and incur massive debt. Adkins and R. Adkins use Rebekah Holding, Investment Holdings, and/or 885 Sternberger to shelter all income and assets from creditors. Upon information and belief, they do not use Rebekah Holdings, Investment Holding, and/or 885 Sternberger to obtain

or secure any debt. This method of sheltering assets was done with the intent to defraud financial institutions, including GSL.

156.     Defendant Elephant Tire is a newly formed limited liability company (as of late 2016) designed to either serve as a debt incurring LLC or an asset holding LLC for Adkins.

157.     The formation of the Adkins Companies was for the purpose of perpetrating a fraud on creditors. The Adkins Companies serve to act merely as Adkins' and R. Adkins' alter ego such that GSL can pierce the veil of such entities.

158.     Therefore, GSL is entitled to a money judgment against Defendants Adkins and R. Adkins, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

159.     Therefore, GSL is further entitled to pierce the veil and obtain a money judgment against Defendants Landash, Midwest Coal, Giant Tyres USA, A&B Retreading, Adkins Tire, Rebekah Holding, Investment Holdings, 885 Sternberger, and/or Elephant OTR, jointly and severally, in the amount of $2,400,00.00, pre- and post- judgment interest, punitive damages, attorney fees, court and other costs, and any and all other relief that Plaintiff is entitled to as a matter of law.

## COUNT XII
## Pre-Judgment Attachment and Pre-Judgment Receivership

160.     Plaintiff incorporates the allegations set forth above, as if fully re-written herein.

161.     GSL is entitled to pre-judgment attachment of assets in accordance with Ohio R.C. §2715.01. Defendants Adkins, R. Adkins, Landash, Midwest Coal, Giant Tyres USA, A&B Retreading, Adkins Tire, Rebekah Holding, Investment Holdings, 885

Sternberger, and/or Elephant OTR have absconded with the intent to defraud creditors; are about to remove property (hence the establishment of 885 Sternberger for example); are converting property into money with intend to defraud creditors; are going to great lengths to conceal property; are assigning, removing disposing of, or are about to dispose of property with intent to defraud creditors; and/or have fraudulently or criminally contracted the debt upon which this lawsuit is based.

162.    GSL is further entitled to have a receiver appointed pursuant to Ohio R.C. §2715.20 to take possession of Defendants Adkins, R. Adkins, Landash, Midwest Coal, Giant Tyres USA, A&B Retreading, Adkins Tire, Rebekah Holding, Investment Holdings, 885 Sternberger, and/or Elephant OTR assets.

163.    Therefore, GSL is entitled to pre- judgment attachment and pre-judgment receivership for all assets held by Adkins, R. Adkins, Landash, Midwest Coal, Giant Tyres USA, A&B Retreading, Adkins Tire, Rebekah Holding, Investment Holdings, 885 Sternberger, and/or Elephant OTR.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount in excess of $2,400,000, administrative costs, finance charges, pre- and post-judgment interest, punitive damages, treble damages, attorney fees, court and other costs, pre-judgment attachment and receivership, and any and all other relief that Plaintiff is entitled to as a matter of law. Plaintiff further demands that its security interest be foreclosed upon and that is may take possession of and sell the collateral.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

By:  /s/Matthew S. Brown
Matthew S. Brown (0077687)
mbrown@cpmlaw.com
366 East Broad Street
Columbus, Ohio 43215
Tele:   (614) 228-6135
Fax:    (614) 221-0216
*Counsel for Plaintiff*
*Great Southland Limited*

## JURY DEMAND

Plaintiffs demand a trial of jury on all issues presented herein.

_____
Matthew S. Brown (0077687)

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED WILL BE USED FOR COLLECTION PURPOSES.**