UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**GREAT SOUTHLAND LIMITED,**

      **Plaintiff,**

   v.                             Case No. 2:17-cv-719
                                    JUDGE GEORGE C. SMITH
                                    Magistrate Judge Jolson

**LANDASH CORPORATION,** *et al.*,

      **Defendants.**


**OPINION AND ORDER**

This matter is before the Court upon Defendant XPO Global Forwarding, Inc.'s ("XPO") Motion to Stay (Doc. 85). Plaintiff Great Southland Limited ("GSL") filed a response in opposition and the time for reply has now expired. For the following reasons, XPO's Motion to Stay is **GRANTED**.

### I.    BACKGROUND

This case arises out of an alleged fraudulent scheme involving the sale of off-the-road mining tires. Defendant Jason Adkins and his company, Defendant Landash Corporation, are alleged to have approached GSL to obtain purchase order financing for the already-negotiated sale of the tires by the seller, Defendant Mid-America Tire of Hillsboro, to the buyer, Defendant Production Tire Company. (Doc. 1, Compl. ¶¶ 40–42). Pending completion of the sale, the tires were to be transferred to XPO's warehouse. (*Id.* ¶ 42). However, GSL alleges that although it provided a $3.5 million loan to Landash to facilitate the tire sale, Production Tire never actually purchased the tires and made no payment to GSL as required by the loan terms. (*Id.* ¶¶ 58–59).

GSL alleges that the parties never intended to complete the sale of the tires and that it was fraudulently induced to provide the loan to Landash. GSL now seeks damages in the amount of the loan balance and unpaid interest and asserts twelve causes of action in its Complaint against Adkins, Landash, Mid-America, Production Tire, XPO, and several other defendants alleged to have been involved in the fraudulent scheme.

Moreover, GSL is not the only financial institution claiming that it was defrauded through a sham sale of tires orchestrated by Adkins, Landash, Mid-America, and XPO. This Court recently stayed all proceedings in a related case involving many of the same players in an alleged fraudulent tire sale in which Adkins procured financing from Abington Emerson Capital, LLC. (*Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, Doc. 144, June 1, 2018).

In January and February of this year, respectively, Landash Corporation and Jason Adkins filed for bankruptcy. (Docs. 69, 73). Accordingly, all claims by GSL against Landash and Adkins are automatically stayed pending resolution of the bankruptcy proceedings under 11 U.S.C. § 362(a). XPO now asks the Court to exercise its inherent authority to further stay proceedings as against all defendants until the bankruptcy stay is lifted.

## II. STANDARD OF REVIEW

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court." *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 626 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). In deciding whether to grant a stay, courts commonly consider factors such as: (1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically

disadvantaged; (4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court. *Grice Eng'g, Inc. v. JG Innovs., Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted); *see also Ferrell v. Wyeth–Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) ("There is no precise test in this Circuit for when a stay is appropriate. However, district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy."). The movant bears the burden of showing both a need for delay and that "neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396.

## III.   DISCUSSION

For the same reasons that a full stay was warranted in *Abington Emerson Capital*, the Court finds a full stay of proceedings appropriate in this case until the automatic bankruptcy stay is lifted as to Landash and Adkins. The Court is mindful that staying the entire action until the Landash and Adkins bankruptcy stays are lifted will result in a delay of as-yet-unknown duration. However, if this case were to proceed, the Court anticipates significant difficulties for all parties.

For example, Adkins and Landash are not shielded from obligations to respond to discovery requests in furtherance of GSL's claims against the solvent co-defendants. *In re Privett*, 557 B.R. 580, 586 (S.D. Ohio 2016) (holding that the automatic stay under § 362 does not shield a debtor "from complying with discovery requests in a multi-defendant action where the debtor is a Defendant, but where the requests for discovery pertain to the claims against the other non-debtor Defendants."). But because Adkins and his co-defendants are all alleged to have participated in the same integrated fraudulent scheme, it seems inevitable that time-consuming disputes will arise as to which discovery requests pertain to GSL's claims against

3

Adkins or Landash, and which pertain to claims against the other defendants. Indeed, the Court has trouble envisioning significant discovery that could be undertaken without implicating GSL's claims against the debtors—which means that very little discovery could proceed even without a stay.

Further, even if the Court were able to identify a subset of discovery requests that pertain only to claims against the non-debtors, Adkins and Landash are key figures in GSL's theory of the case. It seems unlikely that any party could fully present their claims or defenses without their participation. And finally, even if the remaining parties were able to complete discovery and fully present their claims and defenses, proceeding in the absence of Adkins and Landash means that the Court would have to separately adjudicate GSL's claims against the debtors.

All of these logistical difficulties would be avoided by staying the present action until the automatic bankruptcy stays are lifted from GSL's claims against Adkins and Landash. And while GSL may be prejudiced by the delay, the Court finds that the prejudice is not undue. While it is unknown at this point exactly how long the stay will remain in effect, the Court finds that this uncertainty is outweighed by concerns for judicial economy.

### IV. CONCLUSION

For the foregoing reasons, XPO's Motion to Stay is **GRANTED**. This action is **STAYED** in its entirety until the Bankruptcy Court lifts the automatic stays applicable to Adkins and Landash under 11 U.S.C. § 362(a). Further, all other pending motions in this case (Docs. 29, 42, 50, and 86) will be held in abeyance while the case is stayed. The parties are **DIRECTED** to notify the Court when the Bankruptcy Court has lifted the automatic stays.

The Clerk shall remove Documents 29, 42, 50, 85, and 86 from the Court's pending motions list.

**IT IS SO ORDERED.**

      */s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**