IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GREAT SOUTHLAND LIMITED,**

    **Plaintiff,**

  v.　　　　　　　　　　　　　　　　　**Civil Action 2:17-cv-719**
　　　　　　　　　　　　　　　　　　　　**Judge Sarah D. Morrison**
　　　　　　　　　　　　　　　　　　　　**Magistrate Judge Jolson**
**LANDASH CORPORATION, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on two discovery disputes: (1) Plaintiff's request to depose Bradley Jacobs, the CEO of Defendant XPO Logistics, Inc. ("XPO"), along with his Chief of Staff, Catherine Friedman; and (2) XPO's request for unredacted versions of Plaintiff's Credit Committee meeting minutes. (*See* Docs. 180, 181).

For the reasons that follow, Plaintiff's request to depose Mr. Jacobs and Ms. Friedman is **GRANTED**. Neither deposition shall exceed four (4) hours, and Plaintiff must tailor them to be as efficient as possible. The parties shall meet and confer and schedule these depositions to take place within thirty (30) days of the date of this Opinion and Order. Further, XPO's request for Plaintiff's unredacted meeting minutes is **GRANTED**. Plaintiff shall produce these documents within fourteen (14) days of the date of this Opinion and Order.

Given these findings, the parties are **ORDERED** to meet and confer and file a proposed revised case schedule within fourteen (14) days of the date of this Opinion and Order. The parties should note that, absent good cause, the case schedule will not be extended beyond what is

necessary to complete this additional discovery.  Further, the dispositive motion deadline should not change.

> I.      **BACKGROUND**

This case stems from an alleged Ponzi scheme involving the financing of off-the-road ("OTR") tires retailing for roughly $100,000 each.  (*See generally* Doc. 144).  While the subject of the alleged scheme—giant, expensive tires—may be unusual, its basic premise is not.  The alleged perpetrator, Jason Adkins, held his numerous entities out as tire brokerage companies.  (*Id*, ¶ 42).  Adkins would approach potential investors or lenders to invest in his companies or finance lucrative tire deals with the promise of a high return on investment.  (*Id*.).

In March 2016, Plaintiff entered such a deal with Adkins' company, Defendant Landash Corporation ("Landash"), fronting nearly 2.5 million dollars to fund the purchase of 36 tires.  (*Id*., ¶¶ 46–47).  Before closing, however, Plaintiff performed some due diligence.  One of its representatives visited the XPO warehouse in Houston, Texas (the "Warehouse") where the OTR tires were to be stored.  (*Id*., ¶ 49).  Warehouse manager, Defendant Afif Baltagi, showed him the vacant storage space for Plaintiff's 36 tires upon arrival.  (*Id*.).  In April 2016, Defendant Baltagi represented that Plaintiff's tires had arrived.  (*Id*., ¶ 65).

Plaintiff says that was a lie.  (*Id*., ¶ 68).  Defendant Baltagi did store a set of tires in the Warehouse, but they were tires that Adkins had acquired earlier and that belonged to someone else.  (*Id*.).  And Adkins and his alleged co-conspirators did this again and again, telling different investors and lenders that those same tires were theirs.  (*Id*.).  Ultimately, Landash defaulted on its obligations, and Adkins and his co-conspirators allegedly divvied up Plaintiff's investment.  (*Id*., ¶ 78).

Numerous lawsuits like this one ensued.  Pertinent here, Defendant XPO unequivocally

claims that it was unaware of the scheme and that Defendant Baltagi acted alone. (*See generally* Doc. 143). And much of the discovery in this case has focused on that. (*See, e.g.*, Doc. 181-1).

In the spring of 2020, the parties exchanged supplemental documents after the Court granted yet another extension. (*See generally* Docs. 180, 181). As part of the production, Plaintiff received email correspondence between Defendant Baltagi and Star Funding, Inc. ("Star Funding"), an early victim of Adkins' alleged scheme. (*See generally* Docs. 180-2, 180-3). Mr. Jacobs and his assistant, Ms. Friedman, were among the few included on these emails. (*See id.*). Plaintiff now seeks to depose them both. (*See generally* Doc. 180). As for XPO's request, XPO learned at Plaintiff's reconvened 30(b)(6) deposition that Plaintiff had a Credit Committee that met monthly to discuss loans. (Doc. 181-1 at 1). Plaintiff produced the minutes with substantial redactions. (*See generally* Doc. 181-1). XPO now seeks unredacted versions. (*See id.*).

**II.    DISCUSSION**

The Court turns first to Plaintiff's deposition requests before turning to XPO's document request.

**A. Depositions**

Plaintiff seeks to depose two individuals, including Bradley Jacobs, XPO's CEO. And while courts rarely prohibit parties from deposing individuals, different considerations apply when that individual is a corporate officer like Mr. Jacobs. Plaintiff "must show that [Mr. Jacobs] has unique personal knowledge of the matters at issue and that there are no less burdensome ways of obtaining the same information." *Curtis v. Alcoa, Inc.*, No. 3:06-CV-448, 2008 WL 11342549, at *3 (E.D. Tenn. Aug. 27, 2008) (collecting cases).

Plaintiff has met its burden. Plaintiff relies on an email thread as evidence of Mr. Jacobs' personal knowledge. In April 2015, Jo-Ann Erhard of Star Funding emailed Defendant Baltagi

3

regarding the status of Star Funding's 36 tires at the Warehouse. (*See* Doc. 180-2). Unable to get a direct answer from Mr. Baltagi, Ms. Erhard grew suspicious about the tires' whereabouts. (*See id.*). The correspondence grew increasingly tense, and on May 6, 2016, Mr. Jacobs' assistant, Ms. Friedman, forwarded the email chain to Mr. Baltagi's supervisor, Dominick Muzi. (*See* Doc. 180- 3). Mr. Muzi then wrote to Defendant Baltagi, "Please note Brad [Jacobs] is on this email chain and asked me to get involved. Can you please resolve this!!!" (*See* Doc. 180-2). Defendant Baltagi responded curtly, "I am." (*Id.*). Another of his supervisors, Ian Oliver, Vice President of Operations, asked Defendant Baltagi whether he was "responding to Jo-Ann's questions." (*Id.*). Seemingly exasperated by Mr. Muzi's and Oliver's questioning, Defendant Baltagi wrote back, "Come on guys really?" (*Id.*). Mr. Oliver responded, "Afif when Brad [Jacobs] starts question[ing] us we have to question you. We need to be able to provide answers." (*Id.*).

Plaintiff says that these emails show that "Mr. Jacobs possesses knowledge regarding issues pertaining to Mr. Baltagi's activities and the unauthorized release of tires that XPO was holding for Star Funding, Inc." (Doc. 180 at 2; *see also* Doc. 180-1).

XPO, for its part, relies on caselaw establishing that it is generally more difficult to depose a CEO. (*See generally* Doc. 181 at 1–2). That is true, but the heightened standard aims to prevent fishing expeditions or harassment. *Bluewater Music Servs. Corp. v. Spotify USA Inc.*, No. 3:17-CV-01051, 2019 WL 6904599, at *2–3 (M.D. Tenn. Mar. 25, 2019) (citations omitted). For example, a party may not depose a CEO simply to probe his or her background or "foundational" knowledge about the company. *Id.* at *3 (denying plaintiff's request to depose Spotify's CEO regarding "foundational information related to the issues in these cases").

But that is not what Plaintiff seeks to do. To the contrary, the emails suggest that Mr. Jacobs read the correspondence, developed concerns, and raised those concerns with Defendant

Baltagi's supervisors. (*See generally* Docs. 180-2, 180-3). Plaintiff has a right to ask Mr. Jacobs about these emails and his knowledge of Defendant Baltagi's actions. *See Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (noting that courts deny or limit depositions of corporate officers who had "little if any interaction" with the individuals involved in the case).

XPO additionally asserts that the members of its Global Forwarding Team have already been deposed, making Plaintiff's request unduly burdensome and disproportionate to the needs of the case (Doc. 181 at 2). Yet, the Court need not "credit [that] bald assertion . . ., especially when [Mr. Jacobs'] deposition could provide information critical to [Plaintiff's] claims." *Conti*, 326 F. App'x at 907 (reversing district court's decision prohibiting deposition of CEO). While the Court agrees with XPO that Plaintiff should have noticed Mr. Jacobs' deposition months ago, XPO does not explain how this timing prejudices it. (*See* Doc. 181 at 2). Indeed, XPO, too, is currently engaging in supplemental discovery.

In sum, Plaintiff has met its burden to show Mr. Jacobs' potential "knowledge of information relevant to [Plaintiff's] claims." *Conti*, 326 F. App'x at 907. While Plaintiff need not satisfy the same standard to depose Ms. Friedman, Plaintiff has shown that she may be deposed, too. Plaintiff's request is, therefore, **GRANTED**.

Because, however, Plaintiff identifies no other basis supporting Ms. Friedman's or Mr. Jones' knowledge apart from the Star Funding emails, the Court expects Plaintiff's questions to be tailored accordingly. Said differently, the subject matter supporting Plaintiff's request is narrow—so, too, should be the depositions. **Accordingly, the Court limits each deposition to four (4) hours.** Less time will likely be necessary should Plaintiff, as directed, structure each deposition to be as efficient as possible. *See, e.g.*, *E.E.O.C. v. Cintas Corp.*, No. 04-40132, 2015 WL 1954476, at *3 (E.D. Mich. Apr. 29, 2015) (permitting four-hour deposition of Cintas CEO). The

parties shall meet and confer and schedule these depositions to take place within thirty (30) days of the date of this Opinion and Order.

### B. Redacted Meeting Minutes

Plaintiff produced hundreds of pages of minutes from its Credit Committee meetings. (*See* Doc. 18-1 at 56–206). The documents, however, are heavily redacted. (*See id.*). Plaintiff contends that the redactions are proper as they have nothing to do with this lawsuit or XPO's discovery requests. (Doc. 180 at 1). Yet "'[i]t is a rare document that contains only relevant information.'" *Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-CV-4262, 2020 WL 4782860, at *2 (S.D. Ohio Aug. 18, 2020) (quoting *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011)). And the Federal Rules of Civil Procedure "provide no support for the redaction of irrelevant information." *Ewalt*, 2020 WL 4782860, at *2 (citing *Bartholomew*, 278 F.R.D. at 451 ("Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request.")).

As XPO notes, the purportedly irrelevant information from the meeting minutes "'may be highly useful to providing context for the relevant information.'" *Ewalt*, 2020 WL 4782860, at *2 (quoting *Bartholomew*, 278 F.R.D. at 451). Thus, "[t]he Court sees no compelling reason for [Plaintiff] not to disclose information solely on the grounds that [it] thinks the non-disclosed materials are not relevant or responsive where that information appears in a document that contains otherwise relevant or responsive information." *ArcelorMittal Cleveland Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362, 2010 WL 5230862, at *3 (N.D. Ohio Dec. 16, 2010) (citing *Orion Power Midwest, L.P. v. Am. Coal Sales Co.*, No. 2:05-CV-555, 2008 WL 4462301, at *2 (W.D. Pa. Sept. 30, 2008) ("There is no express or implied support [in the Federal Rules] for the insertion of another step in the process . . . in which a party would scrub responsive documents of non-

6

responsive information.")); *see also Tween Brands Inv., LLC v. Bluestar All., LLC*, No. 2:15-cv-2663, 2015 WL 6955177, at *1 (S.D. Ohio Nov. 10, 2015) (compelling production of unredacted documents where defendant had initially redacted portions of documents it characterized as "highly confidential" and "not relevant").

XPO's request for unredacted versions of Plaintiff's meeting minutes is **GRANTED** as a result. Plaintiff shall produce these documents within fourteen (14) days of the date of this Opinion and Order.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's request to depose Mr. Jacobs and Ms. Friedman is **GRANTED**. Neither deposition shall exceed four (4) hours, and Plaintiff must tailor them to be as efficient as possible. The parties shall meet and confer and schedule these depositions to take place within thirty (30) days of the date of this Opinion and Order. Further, XPO's request for Plaintiff's unredacted meeting minutes is **GRANTED**. Plaintiff shall produce these documents within fourteen (14) days of the date of this Opinion and Order.

Given these findings, the parties are **ORDERED** to meet and confer and file a proposed revised case schedule within fourteen (14) days of the date of this Opinion and Order. The parties should note that, absent good cause, the case schedule will not be extended beyond what is necessary to complete this additional discovery, and the Court intends for the dispositive motion deadline to remain the same.

IT IS SO ORDERED.

Date: January 21, 2021                    /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE