# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **GREAT SOUTHLAND LIMITED,** | : | |
| | : | |
| Plaintiff, | : | Case No.: 2:17-CV-719 |
| | : | |
| v. | : | Judge Sarah D. Morrison |
| | : | |
| **LANDASH CORPORATION,** *et al.* | : | Magistrate Judge Jolson |
| | : | |
| Defendants. | : | |

## OPINION AND ORDER

This matter is before the Court pursuant to the Objection of Defendants XPO Logistics, Inc. and XPO Global Forwarding (collectively, "XPO") (ECF No. 184) to Magistrate Judge Jolson's January 21, 2021 Opinion and Order ("Order") (ECF No. 182) allowing the deposition of XPO Logistics' CEO and Chairman, Brad Jacobs, and his Chief of Staff, Catherine Friedman, to proceed. XPO requests oral argument on its Objection. (ECF No. 184, PageID 2526.) Plaintiff Great Southland Limited ("GSL") filed its Opposition (ECF No. 188), and XPO filed a Motion for Leave to File Reply in Support of its Objection to Magistrate Judge's Order (ECF No. 189). GSL opposed XPO's Motion for Leave. (ECF No. 190.)

After due consideration, XPO's Objection is **OVERRULED**, its request for oral argument is **DENIED**, and its Motion for Leave is **DENIED**.

## I. BACKGROUND

This case involves a ponzi scheme centered upon the sale of off-the-road mining tires. In March 2016, GSL loaned $2.5 million to Defendant Landash

1

Corporation to fund the purchase of thirty-six such tires. (ECF No. 144 ¶ ¶ 46-47.) Prior to disbursing the funds, GSL's representative visited XPO's Houston location. While there, Defendant Afif Baltagi, a XPO employee, showed the representative the space where the tires would be stored pending resale.

One month later, Afif Baltagi told GSL the tires had arrived and were being stored at XPO's warehouse. GSL alleges that was a lie. Landash thereafter failed to repay the loan, and this suit followed.

GSL sought to depose Mr. Jacobs and Ms. Friedman due to an e-mail thread among them; Baltagi; Jo-Ann Erhard, an employee of non-party Star Funding[1]; Dominick Muzi, XPO Global's President at the time in focus; and Ian Oliver, XPO Global's Vice-President of Operations. The Magistrate aptly described the e-mails as follows:

> In April 2015, Jo-Ann Erhard of Star Funding emailed Defendant Baltagi regarding the status of Star Funding's 36 tires at the Warehouse. (*See* Doc. 180-2). Unable to get a direct answer from Mr. Baltagi, Ms. Erhard grew suspicious about the tires' whereabouts. (*See id.*). The correspondence grew increasingly tense, and on May 6, 2016, Mr. Jacobs' assistant, Ms. Friedman, forwarded the email chain to Mr. Baltagi's supervisor, Dominick Muzi [stating "it looks like this is getting out of hand. Please can you step in? Many thanks."] (*See* Doc. 180- 3). Mr. Muzi then wrote to Defendant Baltagi, "Please note Brad [Jacobs] is on this email chain and asked me to get involved. Can you please resolve this!!!" (*See* Doc. 180-2). Defendant Baltagi responded curtly, "I am." (*Id.*). Another of his supervisors, Ian Oliver, Vice President of Operations, asked Defendant Baltagi whether he was "responding to Jo-Ann's questions." (*Id.*). Seemingly exasperated by Mr. Muzi's and Oliver's questioning, Defendant Baltagi wrote back, "Come on guys really?" (*Id.*). Mr. Oliver responded, "Afif when Brad

---

[1] Star Funding also loaned Landash money to purchase off-the-road tires with similar results.

2

>    [Jacobs] starts question[ing] us we have to question you. We need to be able to provide answers." (*Id*.).

(ECF No. 182, PageID 2517-18.)

From this, GSL argued Mr. Jacobs possessed "knowledge regarding issues pertaining to Mr. Baltagi's activities and the unauthorized release of tires that XPO was holding for Star Funding, Inc." (ECF No. 180, PageID 2247.) Specifically, GSL asserted that the e-mails show that Mr. Jacobs "was involved in the attempts to resolve XPO's issue with Star Funding as he raised questions regarding the situation and asked Mr. Muzi to get involved to try and resolve the issues." (ECF No. 180-1, PageID 2249.) As to Ms. Friedman, GSL asserted that because she was not listed as a recipient on the e-mail chain, "she would only have knowledge of the matter if she communicated with Mr. Jacobs." *Id*. Accordingly, GSL sought to depose both as persons with knowledge relevant to GSL's respondeat superior claims against XPO as Baltagi's employer.[2]

XPO objected, arguing that neither should be required to sit for a deposition for four reasons. First, both proposed deponents held important positions at a multi-billion dollar company. (ECF No. 181, PageID 2275.) Second, the e-mail thread was irrelevant because it did not address the tires at issue in this case and transpired after GFL made the decision to loan Landash money. (ECF No. 181, PageID 2275.) Third, the depositions were meant to harass. *Id*. at 2275-2276. Fourth, and finally,

---

[2] GSL did not issue formal notices of deposition because it knew the "dispute regarding the deposition[s] needed to be resolved by the Court." (ECF No. 180, PageID 2247.)

3

GSL's request to depose Mr. Jacobs and Ms. Friedman was untimely. *Id*. at PageID 2276. In support, XPO offered the Declarations of its counsel, Mr. Muzi, and Issac Graham, XPO's Director of End User Computer Services. (ECF No. 181, Exs. A-C.)

Magistrate Jolson determined that GSL met its burden of establishing that Mr. Jacobs had "'unique personal knowledge of the matters at issue and that there [we]re no less burdensome ways of obtaining the same information.'" (ECF No. 182, PageID 2517)(quoting *Curtis v. Alcoa, Inc*., No. 3:06-CV-448, 2008 WL 11342549, at *3 (E.D. Tenn. Aug. 27, 2008) (collecting cases)). In particular, the e-mail thread "suggest[ed] that Mr. Jacobs read the correspondence, developed concerns, and raised those concerns with Defendant Baltagi's supervisors." *Id*. at 2518-19. She held that GSL's request was neither harassment nor unduly burdensome. *Id*. The Magistrate found XPO's timeliness argument unavailing, as XPO had not asserted prejudice. *Id*. at 2519. She further concluded that GSL had proven Ms. Friedman could be deposed even under the higher but inapplicable standard assigned to CEOs. *Id*.

XPO's present Objection and Motion for Leave timely followed.

## II. STANDARD OF REVIEW

According to Fed. R. Civ. P. 72(a), when a party objects to a magistrate judge's ruling on a non-dispositive motion, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Likewise, 28 U.S.C. § 636(b)(1)(A) provides that "[a] judge of the court may reconsider any pretrial matter where it has been shown that the magistrate judge's order is clearly

4

erroneous or contrary to law." The "clearly erroneous" standard applies to factual findings and the "contrary to law" standard applies to legal conclusions. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). A factual finding is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). A legal conclusion is "contrary to law" when the magistrate judge has "misinterpreted or misapplied applicable law." *Hood v. Midwest Sav. Bank*, Case No. 2:97-cv-218, 2001 WL 327723, at *2 (S.D. Ohio Mar. 22, 2001) (Holschuh, J.)(citations omitted).

III. ANALYSIS

XPO's Objection mimics arguments it previously presented to the Magistrate, albeit with two additions. First, that GSL's delay in seeking the depositions caused XPO prejudice in the form of negating potential, less invasive resolutions because the discovery deadline has passed. Second, that a protective order is warranted under Fed. R. Civ. P. 26(c). (ECF No. 184, PageID 2539, 2544-45.)

GSL's opposition re-states its prior position before the Magistrate and introduces additional evidence of Mr. Jacobs' knowledge of Baltagi's interactions with Star Funding in the form of a letter ("Letter") addressed to Mr. Jacobs from Star Funding. (ECF No. 188-1.)

XPO replies by seeking leave to supplement its original Objection to address the Letter, which GSL opposes. (ECF Nos. 189, 190.)

5

As an initial matter, despite providing 240 pages of documents to the Magistrate Judge, the Court notes that the following were not presented to the Magistrate when she was deciding the discovery issue: (1) the February 2021 Declarations of Ms. Friedman, Mr. Gene Komsky, XPO's attorney Martha Brewer Motley, and Ian Oliver (collectively, "February Declarations"); (2) the deposition transcripts of Mr. Muzi, Mr. Jorgensen, Mr. Shook, Mr. Oliver, Mr. Komsky, and Mr. Allen; (3) the Letter; (4) XPO's prejudice contentions, and (5) XPO's arguments about Fed. R. Civ. P. 26. The Court cannot and will not consider overruling the Magistrate Judge's Order based upon on materials and arguments that were available but were not provided to her. Thus, XPO's Motion for Leave, which is premised upon the Letter, is **DENIED** as **MOOT**. (ECF No. 189.)

"The scope of discovery is, of course, within the broad discretion of the trial court." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Rule 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit." The Supreme Court directs that Rule 26 be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978).

Ms. Friedman is Mr. Jacobs' Chief of Staff. XPO does not argue that she is a high-level executive at XPO Logistics. Mr. Jacobs is XPO Logistics' CEO. Thus, he is

a high-level executive at XPO Logistics. In this instance, the Magistrate correctly determined that GSL, as the party seeking Mr. Jacobs' deposition, must show that he has unique knowledge of the matters at issue and that there are no less burdensome ways of obtaining the same information. (ECF No. 182, PageID 2517)(citing *Curtis v. Alcoa, Inc.*, No. 3:06-CV-448, 2008 U.S. Dist. LEXIS 145301, at *43 (E.D. Tenn. Aug. 27, 2008)(collecting cases)). *See also Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2020 U.S. Dist. LEXIS 205270, at *13 (E.D. Tenn. Nov. 3, 2020). Neither side objects to application of that standard. (ECF No. 184, PageID 2540; ECF No. 188, PageID 2865-68.)

**A. The Information Pertains to Matters at Issue**.

GSL argues the e-mails are relevant as they pertain to their negligence and respondeat superior fraud claims against XPO. XPO attacks the relevance of the e-mails on two grounds—content and timing.

First, XPO frames the "key issue[]" in this case as "whether GSL completed appropriate due diligence before handing millions of dollars to a stranger." (ECF No. 184, PageID 2542.) From this, XPO argues that the e-mails are irrelevant because they concern different tires than those in this case. (ECF No. 184, PageIDs 2528, 2542.) XPO additionally argues that the e-mails are irrelevant because they were sent after GSL disbursed funds to Landash. (ECF No. 184, PageID 2528.)

XPO's contentions ignore GSL's negligence and respondeat superior fraud counts against XPO based upon XPO's employment of Baltagi. *See* ECF No. 144. As GSL correctly notes, such claims involve questions of what XPO knew about

7

Baltagi's actions, when XPO became aware of his conduct, and whether XPO ratified Baltagi's alleged fraud. (ECF No. 188, PageID 2866.) Because the e-mails concern missing and mishandled tires like the respondeat superior fraud and negligence counts do, the e-mails are a "matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer*, 437 U.S. at 351. Thus, the Court concurs with the Magistrate that GSL satisfied its burden of showing the e-mails pertain to matters at issue and are relevant.

**B. Tailored Depositions Would not Impose an Undue Burden**.

XPO insists that GSL's requested depositions amount to harassment because Mr. Jacobs has no personal knowledge of the matters at issue. (ECF No. 184, PageID 2540.) While acknowledging the e-mails explicitly indicate that Mr. Jacobs asked Mr. Muzi to resolve the dispute and that Mr. Oliver wrote to Mr. Baltagi that "when Brad [Jacobs] starts question[ing] us we have to question you," XPO nevertheless asserts that no one at XPO ever spoke with Mr. Jacobs about the e-mails. (ECF No. 184, PageID 2540.) XPO explains this by referring to Mr. Muzi's January 7, 2021 Declaration wherein he avers that he never communicated with Mr. Jacobs about the e-mails and that he "believes" no one else at XPO did either. (ECF No. 181, PageID 2293, ¶¶ 4-5.)

Of course, Mr. Muzi cannot speak to whether others communicated with Mr. Jacobs about the e-mails. And, Ms. Friedman's e-mail response asking Mr. Muzi to get involved because the situation "is getting a little out of hand" establishes her

8

knowledge of the situation. In this regard, it is important to note that Ms. Friedman's e-mail address was not on the chain; instead, only Mr. Jacob's e-mail address appeared. Thus, her response, combined with Mr. Muzi's statement that Mr. Jacobs, not Ms. Friedman, asked Mr. Muzi to get involved, lead to the conclusion that both Mr. Jacobs and Ms. Friedman may have "unique personal knowledge of the matters at issue." *Curtis*, 2008 WL 11342549, at *3. And, due to that knowledge, harassment is not an issue here.

XPO asserts allowing the depositions to proceed would place an undue burden on Mr. Jacobs and Ms. Friedman in the time away from their important work at "one of the nation's largest transportation and logistics companies." (ECF No. 184, PageID 2542.) Magistrate Jolson addressed this concern by placing a four-hour time limit on each deposition and instructing GSL's counsel to tailor their questions. (ECF No. 182, PageID 2519)(citing *E.E.O.C. v. Cintas Corp.*, No. 04-40132, 2015 WL 1954476, at *3 (E.D. Mich. Apr. 29, 2015)(permitting four-hour deposition of Cintas' CEO)). The Magistrate's approach negates XPO's undue burden concern.

XPO argues that GSL has already obtained the information it seeks in a less burdensome manner. (ECF No. 184, PageID 2542.) Namely, XPO submits that GSL has the information "from the six XPO witnesses who testified at length" about the Star Funding matter. (ECF No. 184, PageID 2542.) However, the Court need not

> credit [that] bald assertion that being deposed would present a substantial burden, especially when [Mr. Jacobs'] deposition could provide information critical to [GSL's] claims. To allow a defendant to avoid his discovery obligations on such a thin basis frustrates the

9

purpose of discovery, and runs counter to the Supreme Court's explicit instruction that discovery privileges should be 'construed broadly.'

*Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009)(quoting *Oppenheimer Fund*, 437 U.S. at 351).

XPO next plays the public policy card, asserting that permitting the depositions to go forward would establish "a burdensome and dangerous precedent—that the CEO of a public company can be ordered to sit for a deposition simply because he was incidentally copied on an unsolicited e-mail from a third party." (ECF No. 184, PageID 2543.) Mr. Jacobs' deposition will proceed not because he was copied on one e-mail, but because he was copied on multiple e-mails *and* because the e-mails indicate that he directed Mr. Muzi to get involved in the situation. Under these facts, XPO's public policy argument is unpersuasive.

To summarize, GSL has satisfied its burden of establishing that Mr. Jacobs has unique personal knowledge of the matters at issue and that there are no less burdensome ways of obtaining the same information. GSL has also established that Ms. Friedman meets this higher standard even though GSL is not required to do so. The Order is neither clearly erroneous nor contrary to law, and XPO's Objections are **OVERRULED**. (ECF No. 184)

## IV. CONCLUSION

XPO's Objections (ECF No. 184) to the Order (ECF No. 182) are **OVERRULED**. XPO's request for a hearing (ECF No. 184) is **DENIED**. XPO's Motion for Leave is **DENIED**. (ECF No. 189.)

The Court **ADOPTS** the Order. (ECF No. 182.) Plaintiff's request to depose Mr. Jacobs and Ms. Friedman is therefore **GRANTED**. Neither deposition shall exceed four (4) hours, and Plaintiff must tailor them to be as efficient as possible. The parties shall meet and confer and schedule these depositions to take place within forty-five days of this Opinion and Order.

Counsel shall jointly contact Magistrate Jolson's chambers within five days of this Opinion and Order to address the case schedule. However, the present dispositive motion deadline of July 19, 2021 may not be altered.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**