# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SOUTHLAND LIMITED, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:17-CV-00719 |
| | : | |
| v. | : | |
| | : | JUDGE MORRISON |
| LANDASH CORPORATION, et al., | : | |
| | : | MAGISTRATE JUDGE JOLSON |
| Defendant. | : | |

**DEFENDANTS XPO LOGISTICS, INC. AND XPO GLOBAL FORWARDING, INC.'S MOTION IN LIMINE NO. 4 TO PRECLUDE GSL FROM CALLING BRAD JACOBS OR CATHERINE FRIEDMAN AS A WITNESS AND TO EXCLUDE THE JACOBY SUPPLEMENTAL REPORT**

## I. INTRODUCTION

Defendants XPO Logistics, Inc. ("XPO Logistics") and XPO Global Forwarding, Inc. ("XPO Global Forwarding") (collectively, "XPO") seek to prevent Great Southland Limited ("GSL") from calling XPO Logistics' CEO and Chairman, Brad Jacobs, and his former Chief of Staff, Catherine Friedman, as witnesses at trial. GSL claims that "Mr. Jacobs will testify regarding Star Funding's interactions with Baltagi after uncovering Adkins' fraud and Baltagi's alleged participation in the fraud" and that Ms. Friedman "will testify regarding Star Funding's interactions with Baltagi after uncovering Adkins' fraud and Baltagi's alleged participation in the fraud." (*See* Joint Pretrial Statement.) However, as their depositions established, and as this Court has already held, these witnesses lack knowledge regarding Star Funding's interactions with Baltagi. (*See* Abington ECF No. 455 at 21.[1]) Moreover, neither Mr. Jacobs nor Ms. Friedman had

---

[1] The Court's Order from the case captioned *Abington Emerson Capital, LLC v. Adkins*, et al., Case No. 2:17-cv-00143-SDM-KAJ (ECF 455), is attached as Ex. 1.

any involvement in the issues underlying this litigation and neither has any knowledge whatsoever about GSL's case.

Mr. Jacobs was deposed in this case because he was incidentally copied on an email chain from non-party Star Funding. Ms. Friedman was deposed because she was his Chief of Staff and had access to his emails. That matter was briefed extensively. (ECF Nos. 177–182, 184, 188–190, 192–196). The Magistrate Judge's order allowing GSL to take Mr. Jacobs and Ms. Friedman's depositions stated, "Because, however, Plaintiff identifies no other basis supporting Ms. Friedman's or [Mr. Jacobs'] knowledge apart from the Star Funding emails, the Court expects Plaintiff's questions to be tailored accordingly. Said differently, the subject matter supporting Plaintiff's request is narrow—so, too, should be the depositions." (ECF No. 182 at 5.) This Court affirmed the Magistrate Judge's order, and specifically required GSL to "tailor their questions" to be efficient and aligned with the Court's order. (ECF No. 192 at 9.) The resulting testimony made it clear that neither Mr. Jacobs nor Ms. Friedman had any involvement in the Star Funding matter, or any other tire-related matters, much less involvement with GSL.

This Court granted a substantially similar motion in the *Abington* case, holding that "Jacobs lacks relevant knowledge. Any testimony from him would therefore be inadmissible." (*Id.* at 21.) The same is true for Ms. Friedman. Thus, the same result is warranted here.

In an attempt to avoid this Court's prior ruling, GSL now concocts a new theory of relevance: its expert, David Jacoby, reviewed the very limited deposition testimony of Mr. Jacobs and Ms. Friedman and issued a Supplemental Report opining on that testimony.[2] But the fact that GSL's expert reviewed *irrelevant* testimony does not somehow make that testimony now relevant.

---

[2] A copy of email correspondence reflecting GSL's position is attached as Ex. 2. Mr. Jacoby's Supplemental Expert Report is attached as Ex. 3.

In addition, GSL cites this testimony as though it is comprehensive, corporate representative testimony on topics of corporate governance. And from that limited testimony, Jacoby attempts to extrapolate all manner of corporate governance topics and then offer speculative opinions on that testimony. However, neither Jacobs nor Friedman was designated as a corporate representative; they were required to testify solely on the narrow topic of the Star Funding emails. GSL should not be permitted to bootstrap the narrow deposition testimony of these two witnesses to encompass the broad topics identified by its expert, nor should GSL's unsupported theories serve as a basis to make these two witnesses testify at trial. The testimony of Mr. Jacobs and Ms. Friedman, and the Supplemental Report of Mr. Jacoby based on those depositions, should be excluded in full.

## II. FACTS

Throughout discovery in this litigation, Mr. Jacobs and Ms. Friedman have appeared in only one context—a set of emails in which non-party Star Funding carbon copied their publicly-available email addresses and one letter addressed to Mr. Jacobs without any evidence he in fact received it. By this point, the Court is all too familiar with the issues related to the Star Funding dispute, so those facts will not be reiterated here but will be incorporated by reference to prior briefing. (*See Abington Emerson Capital, LLC v. Adkins, et al.*, Case No. 2:17-cv-00143, ECF Nos. 413, 429.)

GSL vigorously pursued Mr. Jacobs' and Ms. Friedman's deposition based on one email chain, and the Court permitted very short, very narrow depositions. (*See* ECF No. 192.) As anticipated, Mr. Jacobs testified at his deposition that he has zero recollection of seeing or reading the emails, did not respond to the emails, never discussed the emails, and has no idea what, if anything, his assistant may have done with the emails. (Jacobs Dep. at 31–32, 39, 48, 51, relevant excerpts attached hereto as Ex. 4.)

Having not even seen or read the emails, Mr. Jacobs can provide no further information about them. (*See e.g. id.* at 39–40 ("Q: Do you know what the purpose of that email was? A: I do not.").)  Despite another XPO employee using Mr. Jacobs' name in one subsequent email, Mr. Jacobs has no recollection of speaking with that employee and has no idea why the employee would have used his name. (*Id.* at 46–47 ("I don't recall speaking with [the employee] about this, and I don't know why he said what he apparently said.").)[3]  Mr. Jacobs' deposition testimony shows unequivocally that he has no relevant knowledge about the emails.

Similar, Ms. Friedman's deposition testimony shows unequivocally that she has no relevant knowledge about the emails or the letter beyond what is reflected on the face of the documents. (Friedman Dep. at 77–80, 82.)[4]  Having no knowledge of the emails or letter, Ms. Friedman can provide no further information about them. (*See e.g.*, *id.* at 83, ("In this case, I have no recollection of this letter or what happened to it."); *id.* at 85 (testifying that she has "no recollection" of discussing Star Funding with either Mr. Muzi or Mr. Jacobs).)  Ms. Friedman's deposition testimony further shows unequivocally that she has no relevant knowledge about the emails, the letter, or any other matter relevant to this case.

While it is apparent that Ms. Friedman and Mr. Jacobs do not have relevant knowledge regarding the Star Funding matter, GSL's counsel attempted to stretch the scope of the deposition into topics more appropriately directed to a designated corporate representative. For example, Mr. Jacobs was shown the XPO Logistics, Inc. Code of Business Conduct and Ethics and was asked how the Board of Directors would be notified of violations of the code. (Jacobs Dep. at 27–28.) He was also asked whether there is a separate code of conduct and ethics for executives (*id.*), which

---

[3] Several other XPO employees also confirmed they did not discuss the Star Funding matter, or any other tire-related issues, with Mr. Jacobs. (*See* ECF Nos. 184-1 to 184-3, 184-5 to 184-13.)
[4] Relevant excerpts of the Friedman Deposition are attached as Ex. 5.

was outside the scope of the permitted topics. Mr. Jacobs was likewise asked about who at "XPO" would deal with "customer complaints." (*Id*. at 60–61.) GSL also far exceeded the scope of the permitted deposition by asking Mr. Jacobs about other instances in which XPO had been involved in litigation (*id.* at 62–63).

Likewise, Ms. Friedman was questioned about the XPO Code of Ethics and suspected violations of the same (Friedman Dep. at 51–53), whether she had opinions on when to call the whistleblower hotline (*Id.* at 53–54), and whether she was familiar with Sarbanes-Oxley compliance (*Id.* at 56).

Now, GSL seeks to have its expert, Mr. Jacoby, rely on the limited testimony of witnesses testifying in their individual capacities—not as corporate representatives—and extrapolate speculative opinions about the general practices at XPO and how those "could" have impacted GSL. Such speculative opinions, relying on witnesses deposed for a narrow purpose, do not change the fact that Mr. Jacobs' and Ms. Friedman's testimony is not relevant, as this Court has previously held.

### III. LAW AND ARGUMENT

#### A. Neither Mr. Jacobs nor Ms. Friedman has Relevant Knowledge that Could Assist the Jury.

District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir. 1991). Under Federal Rule of Evidence 403, evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Neither Mr. Jacobs nor Ms. Friedman can provide any information to the jury that would cause any fact to be more or less probable because they have no relevant knowledge. *See supra*

Section II.[5] Both of these individuals' testimony prove that they know nothing about the Star Funding situation, much less GSL, and therefore will not make it more or less probable that GSL justifiably relied on Baltagi's representations or that XPO can be held liable for Baltagi's conduct. To the extent GSL wishes to introduce evidence of other litigation that Mr. Jacobs was asked about, that is also not relevant to the issues in this case.[6] The fact that Jacoby cited this testimony should not change this Court's prior finding that Mr. Jacobs lacks relevant knowledge and therefore any testimony would be inadmissible. The same holds true for Ms. Friedman. The Court should rule consistent with its opinion in *Abington* and preclude Mr. Jacobs and Ms. Friedman from being called as witnesses at trial.[7]

**B. GSL Seeks to Extrapolate from the Narrow Jacobs and Friedman Deposition Testimony Topics to Permit its Expert to Offer Speculative Opinions**

Because Mr. Jacobs and Ms. Friedman's testimony is not admissible, opinions derived from those depositions should also be inadmissible. Worse yet, the opinions that GSL's expert seeks to offer based on this narrow testimony are entirely inappropriate for several reasons.

First, GSL sought to extrapolate corporate representative-style testimony from the very short depositions of Mr. Jacobs and Ms. Friedman on the very narrow topic of whether either

---

[5] While the Court permitted Mr. Jacobs and Ms. Friedman to be deposed, this does not mean Mr. Jacobs' and Ms. Friedman's testimony is admissible. *See United States v. Quebe*, No. 3:15-cv-294, 2017 U.S. Dist. LEXIS 9005, at *5 (S.D. Ohio Jan. 23, 2017) (discoverable evidence need not be admissible) (citation and quotation omitted).

[6] To the extent GSL believes there are other relevant topics of inquiry for Mr. Jacobs or Ms. Friedman—and it has not identified any—that information can be more readily obtained from the other XPO witnesses. For example, XPO and GSL both intend to elicit testimony from the former president of XPO Global Forwarding and Baltagi's former supervisor, Dominic Muzi, as well as the three other members of the XPO Global Forwarding executive team and an XPO corporate representative. (*See* Joint Pretrial Statement, *passim*.)

[7] GSL has indicated that it intends to subpoena Mr. Jacobs and Ms. Friedman for their live trial testimony. In the likely event that those subpoenas fail as outside the subpoena power of the Court, GSL should be disallowed from offering their deposition testimony at trial for all of the same reasons stated herein.

reviewed emails related to the Star Funding dispute. But neither witness was being offered as a corporate representative to discuss the issues Mr. Jacoby addresses, namely corporate structure and governance, email use, the function of the legal team, etc. (*See* Jacoby Supp. Rep. *passim*) To the extent GSL wished to ask a corporate representative about these topics, it had that opportunity to identify those topics and ask those questions when it deposed a corporate representative. GSL chose not to do so. GSL should not be permitted to extrapolate the narrow depositions of Mr. Jacobs and Ms. Friedman into a wide-ranging basis for additional testimony, much less to use that narrow testimony as a valid basis for its expert's wide-ranging opinions.

Second, Jacoby's opinions, based on the very narrow, limited testimony of these two witnesses, are entirely speculative. *In re E.I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 337 F. Supp. 3d 728, 747 (S.D. Ohio 2015) ("An expert opinion cannot be based on speculation."); *C. Van Der Lely N.V. v. F. Lli Maschio S.n.c.*, No. C-2-78-565, 1983 U.S. Dist. LEXIS 16430, at *13 (S.D. Ohio June 7, 1983) ("This Court agrees with the plaintiff's arguments. It is clear that [this expert] has no knowledge as to whether the Tice machine was ever built. Therefore, that testimony should be excluded as unfounded speculation.").

For example, Jacoby openly speculates:

- " . . . the failure of the office of the CEO to adhere to basic risk management principles, practices, and procedures ***seems*** *directly* responsible for XPO failing to notice the GSL fraud." (Jacoby Supp. Rep. at 7 (emphasis added).)

- "To the extent that Friedman processed all or nearly all of the operational communications coming into the CEO's office, and employees knew this, Shook/Muzi/Jorgensen/Oliver ***likely assumed*** that the emails about Star Funding did *not* come directly from Jacobs himself, but were rather just an administrative "FYI" from his Assistant. It now makes sense why Baltagi's supervisors were so inattentive about follow-through to the GSL crisis: they ***probably considered*** the emails from the Jacobs email address, which they knew were actually coming from Catherine Friedman, as administrative annoyances rather than high-priority messages with potential consequences for their jobs and careers." (*Id.* at 7–8 (emphasis added).)

- "***It seems self-evident to me*** that a lack of procedural discipline would lead to system failures." (*Id.* at 7 (emphasis added).)

- "As clear workflows and reporting relationships are prerequisites for effective Separation of Duties . . . , a risk management principle that underpins many auditing and fraud management frameworks such as ISO 31000 and Sarbanes-Oxley, ***it could be said*** that XPO's ambiguous roles and disregard for chain of command made it impossible for XPO to responsibly manage risk." (*Id.* at 8 (emphasis added).)[8]

- "My report noted that the Assistant to the CEO forwarded all legal correspondence directly to the Legal department with no communications to the CEO. Jacobs' testimony affirms that this was by design. The CEO relied on XPO's *lawyers* to brief him, not XPO operations staff or his assistant. (Jacobs, 59) Expecting to battle it out in court rather than address the issue internally, Legal could then assert privilege, as noted in my report, over the vast majority of communications related to disputed matters. ***From this it might appear that*** XPO had no interest in ever addressing the root cause of the fraud against GSL or preventing more of it through conventional measures such as process improvement, reprimands and firings." (*Id.* at 8 (emphasis added).)

Jacoby even admitted that many of these opinions are speculative or simply based on "common sense" and his belief that the XPO witnesses deposed in 2019 (three years after the fact) by Abington's counsel did not give good answers in their depositions:

> Q. Are you just using your common sense or inferring that Mr. Jacobs did this intentionally for plausible deniability?
>
> **A. Absolutely. It's a little more than that. While reviewing all those depositions and observing so many instances of evasiveness on the part of Muzi, Shook and Oliver and Baltagi and others, I put together what looked like a pattern to me. So it was a little more than common sense. It was based on my observations, reading all of the depositions coupled with common sense.**
>
> Q. And when you say they were evasive you mean in the deposition they seemed evasive?
>
> **A. Yes.**

---

[8] Jacoby readily admitted that he did not purport to be an expert on Sarbanes-Oxley. (*See* Jacoby Dep. at 170.) Relevant excerpts of the Friedman Deposition are attached as Ex. 6.

> Q. Could it have been that those were just bad questions asked, like I have done many times today?
>
> **A. No It was in my opinion and in my observation, it was almost on par with Baltagi saying he pleads the Fifth to every single question. The amount of I don't knows and I don't remembers in many of those depositions left a lot of open questions.**

In addition to offering complete speculation, by basing his opinion on his subjective perception of the credibility of deposition testimony, Jacoby has strayed far from an appropriate expert topic. *See, e.g., Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 253 F. Supp. 3d 997, 1013 (S.D. Ohio 2015) ("The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (quoting *Siring v. Oregon State Bd. of Higher Ed.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)); *Mar Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013) ("An expert cannot testify about a witness' credibility. The jury, not the expert, evaluates credibility.").

Jacoby offers another speculative opinion that XPO's former COO, Troy Cooper, should have been copied on some undefined subset of emails sent by Ms. Friedman. (Jacoby Supp. Rep. at 8.) But, again, Mr. Jacoby admits that he has no idea whether or not Mr. Cooper was involved in this type of communication, which, again, would have far exceeded the permitted scope of the Jacobs and Friedman depositions. Again, if GSL wanted to probe the depths of Mr. Cooper's involvement, GSL should have asked those questions during a corporate representative deposition. It should not be permitted to bootstrap in this testimony by haling into Court two individuals whom the Court has already decided do not have relevant testimony to offer.

Jacoby also offers opinions about how a secretary and a CEO *should* communicate, but this opinion is based on "benchmaking secretarial staffing policies for C level executives" that were performed **thirty years ago,** in the early 1990s, at a company that may or may not have even used

email at that time.  (Jacoby Dep. at 270.)  Regardless of his lack of expertise on this topic, Jacoby offers the inaccurate, and reckless, opinion that, "Catherine Friedman effectively ran XPO by representing herself as [Mr. Jacobs] without limitation."  (Jacoby Supp. Rep. at 7.)  How Mr. Jacobs and Ms. Friedman conducted their business, writ large, is not something that should be extrapolated from the narrow deposition testimony from Mr. Jacobs or Ms. Friedman, nor is it a basis to burden Mr. Jacobs or Ms. Friedman with providing additional trial testimony.

In short,  Jacoby should not be permitted to offer speculative opinions based on the narrowly tailored—and irrelevant—depositions of Mr. Jacobs and Ms. Friedman.  These speculative opinions are not admissible and therefore the late-stated basis for the trial testimony of Mr. Jacobs and Ms. Friedman also fails.

## IV. CONCLUSION

For the reasons stated herein, XPO asks the Court to prohibit GSL from presenting the irrelevant testimony of Brad Jacobs or Ms. Friedman or otherwise seeking to call them as witnesses.

Respectfully submitted,

*/s/ Martha Brewer Motley*
Kimberly Weber Herlihy (0068668)(trial attorney)
Martha Brewer Motley (0083788)
Thomas J. Whaling (0096430)
Erica M. Rodriguez (0098711)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216
Phone: (614) 464-8283 Fax: (614) 719-5021
Email: kwherlihy@vorys.com
         mbmotley@vorys.com
         tjwhaling@vorys.com
         emrodriguez@vorys.com
*Counsel for Defendants XPO Logistics, Inc. &*
*XPO Global Forwarding, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2021, a true and correct copy of the foregoing was filed and served electronically via the Court's CM/ECF System upon those who are registered to receive electronic notice. I have also served the following parties via U.S. Mail at the addresses below:

Jason Adkins
885 Sternberger Road
Jackson, OH 45640

Afif Baltagi
2308 Nantucket Drive, Apt. C
Houston, TX 77057

/s/ *Martha Brewer Motley*
Martha Brewer Motley (0083788)