IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GREAT SOUTHLAND LIMITED,**

                **Plaintiff,**        Case No.: 2:17-cv-00719

       vs.                      Judge: Hon. Sarah D. Morrison

**LANDASH CORPORATION, et al.,**    Magistrate Judge: Hon. Kimberly A. Jolson

                **Defendants.**

## DEFENDANTS XPO LOGISTICS AND XPO GLOBAL FORWARDING'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID JACOBY

### I.    INTRODUCTION

In an effort to prove that XPO should be liable for Adkins' and Baltagi's bad acts, GSL seeks to offer expert testimony from David Jacoby. Jacoby, however, is not qualified to render the opinions that he offers. Jacoby purports to be an expert on nearly all things related to the broad fields of "supply chain management, operations strategy and performance improvement, primarily in the transportation, logistics, energy, and automotive sections" among many, many other areas. His opinions span the gamut from best practices for freight forwarders, to real-time email monitoring, to human resources, to the Sarbanes Oxley Act. But his experience as a jack-of-all-trades in "supply chain management" only gives him surface-level knowledge on many things, and does not render him an expert in these areas.

Further, Jacoby's report is replete with references to unreliable sources, like anonymous internet posts and data compiled by activist-short-seller investors. Jacoby's Report extensively relied on a document that **he testified he had never even seen before**. In addition, Jacoby consistently relies on inaccurate facts that entirely undermine the reliability of his report. Jacoby even resorts to outright speculation. Accordingly, Jacoby's opinions are unreliable.

**II.     LAW AND ARGUMENT**

The trial judge is the gatekeeper for expert testimony, and is responsible for screening proffered expert testimony to ensure that only relevant and reliable testimony is admitted. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

**A.     Jacoby is Not an Expert on the Topics on Which He Opines**

"To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (quoting Fed. R. Evid. 702). "[A] a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue." *CDA of Am. Inc. v. Midland Life Ins.* Co., No. 01-CV-837, 2006 U.S. Dist. LEXIS 97327, at *8 (S.D. Ohio Mar. 27, 2006).

Jacoby opines regarding seemingly every issue in this case.[1] However, while purported master of all, Jacoby is in fact a master of none. For example, in addition to the *many* other services he offers on his website, he markets himself as an expert witness on "Contract interpretation, contract administration, and contract dispute"; "Transfer pricing"; "Price manipulation"; "Monopoly pricing and market dominance"; "Procurement processes and practices"; and "Logistics and transportation."[2] In an earlier case, Jacoby offered expert opinions "concern[ing], among other things, the complexities involved in the sale of coal, natural gas and oil, and the sophistication of the individuals who purchase these commodities on behalf of their companies[.]" *See American Energy Corporation. American Energy Partners, LP et al.*, Case No. 2:13-cv-00886 (S.D.Ohio Sept. 9, 2013) at Doc. No. 150.

---

[1] Jacoby's Report is attached as Ex. 1. His Rebuttal Report is attached as Ex. 2. His Supplemental Report is attached as Ex. 3
[2] A page of Jacoby's website is attached as Ex. 4.

2

Here, Jacoby opines regarding email management best practices for a CEO (Jacoby Rep. at 15); Sarbanes-Oxley (*id.* at 17); real-time email monitoring of employees (*id.* at 20); human resources (*id. passim*); audits of many different varieties (*id. passim*); XPO's management structure (*id.* at 26); "Baltagi's duties and responsibilities as Branch Manager" (Jacoby Rep. at 4); and many, many other topics that are too numerous to detail.

While at first glance he appears to have significant expertise, a review of the work he has actually done reveals that he has surface level experience in many broad areas but no actual expertise in the matter at hand. (*See e.g.* Jacoby Dep. at 33 (admitting he sees a wide range of engagements but does not remember specifics); *id.* at 23 (admitting that his consulting with a freight forwarder related to paperwork flow to the customer of the freight forwarder, not recommendations to the freight forwarders on their protocols or documents); *id.* at 50 (admitting he has not advised on the contents that should or should not be contained on a warehouse receipt); *id.* at 116-117 (admitting that he does not specialize in HR policies); *id.* at 174 (admitting that he has never been retained to perform a fraud audit, does not know what a fraud audit checklist would entail, and refers to consultants for that expertise); *id.* at 175-177 (admitting that he does not know how his clients monitor their emails and has not made recommendations for any client on whether email monitoring is prudent); *id.* at 202-204 (admitting he has no understanding of XPO's email retention policies or practices but is making "inferences"); *id.* at 233 (admitting he does not know what "non-negotiable" would mean on a warehouse receipt); *id.* at 270 (testifying that he "benchmarked" secretarial *staffing* policies in the early 1990s but does not know if those related to email use); *id.* 286-287 (admitting he's "really not totally sure" what a bonded warehouse is).)[3]

---

[3] Relevant excerpts of Jacoby's deposition are attached as Ex. 5.

Thus, while Jacoby's past work consists of a broad array of consulting on very general high-level practices for a wide-ranging set of industries, Jacoby does not have the requisite experience to offer his opinions here and therefore they should be excluded.

### B. Jacoby's Opinions Are Not Reliable

Rule 702 "imposes a special obligation upon trial judges to 'insure that any and all scientific testimony . . . is not only relevant, but reliable." *Khumo Tire Co v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert* 509 U.S. at 589). Jacoby's testimony is unreliable as he bases his opinions on both unverified and unreliable sources and inaccurate facts not found in the record, and even outright speculation.

#### 1. He Relies on Unreliable Data and Sources in Forming his Opinions

Jacoby relies on sources that he admits are unreliable and irrelevant without the appropriate context. For example, Jacoby repeatedly relies on anonymous postings on the online blog Glassdoor.com as the basis for his expert opinions. (*See* Jacoby Rep. at 13 n.4, 14 n.6, 22 n.11, 27 n.15.) For instance, to support his assertion that XPO has confusing organizational relationships that "lead to ambiguity and a lack of accountability (*id.* at 14), he cites a review on Glassdoor.com where an unnamed poster stated that XPO was disorganized and understaffed. (*Id.*) Similarly, in support of his opinion that XPO lacks customer satisfaction metrics, Jacoby cites a review posted on Glassdoor.com alleging that the company cut staff and caused customer dissatisfaction, "destroyed customer freight," and other inflammatory allegations. (*Id.* at 22.)

Despite the multiple opinions that are based on Glassdoor.com, Jacoby failed to verify the accuracy of the website or even understand how it worked. Jacoby was unable to explain which XPO entity the reviews related to, he admitted employers are unable to refute, edit, or challenge the reviews, and he agreed the average employer only has a rating of 3.5 out of 5. (Jacoby Dep. at 124, 128-30.) Jacoby also admitted he did not know how Glassdoor.com calculates employer

4

ratings. (*Id.* at 132.) Further, Jacoby himself admitted that he could not give credence to the reviews of his own company on Glassdoor.com and had no idea whether they were accurate. (*Id.* at 132–133 (referring to employer ratings and stating "I have a reason not to give it credence. It's not really clear what this represents to me."); *id.* at 138 (stating he had "no opinion" about the review of his own company), *id.* at 137 (no opinion as to whether reviews are accurate or inaccurate).) Further, Jacoby admitted that, without context, the Glassdoor.com review has no relevance. (*Id.* at 140 ("Q: So without context this has no relevance? A: Right.").)

Jacoby also relied on a report from Spruce Point Capital Management—an investment firm that has a "short" position on XPO's stock. As a short-seller, Spruce Point has a direct financial interest in XPO's stock falling.[4] The cover of the Spruce Point Report features a truck driven by a Muppet—an ad hominem jab at XPO's leadership. It also prominently features "P.O.S. Logistics" across the top of the truck (*i.e.* "Piece of Shit Logistics"). Despite Spruce Point's clear anti-XPO agenda, Jacoby relied on this report extensively, citing it multiple times and attaching the executive summary as Exhibit A to his report.

Worse yet, despite his reliance on Spruce Point, Jacoby testified that he had *only* relied on the Executive Summary of the report and **had never even seen the entire report until the deposition**. (Jacoby Dep. at 154.)[5] Jacoby also cited an article by Ben Axler, the principal of Spruce Point, describing this as "a *different* source than Spruce Point Capital source," with the implication that many different voices were raising the same criticism of XPO. (Jacoby Dep. at 157 (emphasis added).) But, upon learning that Axler is, in fact, the principal of Spruce Point, he

---

[4] The Spruce Point Report is attached as Ex. 6.
[5] The Jacoby report includes three pages of the Spruce Point report attached as Appendix A. Jacoby, however, produced the entire 68-page Spruce Point report in response to a subpoena seeking documents upon which he relied. Despite producing the full report, Jacoby testified that he had never seen that full report before his deposition. (Jacoby Dep. at 154.)

5

admitted that "Yeah—I mean, yeah, I probably wouldn't have called it another source if I had known that." (*Id.* at 157.)

Jacoby's Rebuttal Report likewise cites to a document created by "Redwood," an entity about which Jacoby knew nothing (Jacoby Dep. at 251-253 & Ex. 20; Rebuttal at 13-14 & fn 6), and a competitor's manual related to a different business line he apparently pulled from the Internet (*Id.* at 250-251 & Ex. 19; Rebuttal at 13-14 & fn 5). This is not reliable.

Here, the data and sources underlying his opinion are unreliable and therefore his opinions are lacking sufficient facts and data as required under Rule 702. *See Ellipsis, Inc. v. Color Works, Inc.*, 428 F. Supp. 2d 752, 760 (W.D. Tenn. 2006) (excluding expert report when the expert relied on data and information from a website and failed to verify its accuracy); *Motor Co. v. Versata Software, Inc.*, No. 15-cv-10628, 2018 U.S. Dist. LEXIS 236571, at *15 (E.D. Mich. July 9, 2018) (excluding expert testimony when the expert failed to gather data in a reliable manner when he relied on data from a website, without taking independent verification effort, and the website did think highly of the opposing party); *Kilgore v. Carson Pirie Holdings, Inc.*, 205 F. App'x 367, 372 (6th Cir. 2006) (affirming exclusion of expert which relied on an internet article without knowing what research or methodology the article used or conducting any further independent research on the subject). Accordingly, Jacoby's opinions should be excluded.

### 2. Jacoby Relies on Incorrect Facts When Forming his Opinions

Jacoby's opinions are also based on inaccurate facts. His report is replete with countless examples of facts that are inaccurate, facts that cite to evidence or testimony that simply does not exist, and facts that are outright contradicted by the record. As only a few examples of his inaccuracies:

- He opines that "an immediate audit response was required of XPO, especially by May 2016 when Star [Funding] initiated litigation against XPO." (Jacoby Rep. at 25.) This opinion

- is fundamentally unreliable because Star Funding *never* initiated litigation against XPO;

- Jacoby states that "[n]obody ever responded definitively to Brad Jacob's request to take care of the Star Funding problem or reply to Star Funding's irate email." (Jacoby Rep. at 14.) Mr. Jacobs' testimony, however, made clear that he was not involved with the so called "Star Funding problem" and never made such a request.

- Jacoby cites Jorgensen Dep. Ex. 213 and states that this email was never responded to by XPO. But that same exhibit clearly shows that Dominick Muzi responded on May 6, 2016.[6]

- Jacoby opines that, "nine people were responsible for overseeing the Houston branch over four years. At an average of 5.3 months each (48 months divided by nine people), Baltagi knew he could pull the wool over their eyes. A supervisor with a longer tenure would have seen the problem escalate." (Jacoby Rep. at 27.) But in that calculation, Jacoby fails to account for the facts that (1) Baltagi term as branch manager ended in June 2016; (2) the branch actually closed in July 2017; (3) the "nine people" double counts two of the supervisors, and counts two "supervisors" whose tenure at XPO post-dates Baltagi's relationship with XPO, which ended in April 2018; and (4) uses 48 months as the denominator despite that Baltagi was only an independent contractor for 4 months of 2018, so, even assuming this math exercise has merit, the denominator should be 39. (Jacoby Dep. at 142-147.) Jacoby compounds the issue by attempting to buttress this opinion by referencing yet another Glassdoor.com post from 2021 related to a customer service representative in Butte, Montana, and an entirely different XPO entity. (*See* Jacoby Rep. at 27, fn 15; *compare* Jacoby Dep. at 123-128 & Ex. 11.)

Furthermore, there are countless examples in Jacoby's report where he cites to deposition pages that simply do not exist. (*See e.g.*, Jacoby Rep. at 11 (citing Jorgensen Dep. 826-852); *id.* at 14 (citing Muzi Dep. 811); *id.* at 15 (citing Jorgensen Dep. 849); *id.* at 17 (citing Baltagi 825); *id.* at 18 (citing Muzi Dep. 731 and Jorgensen Dep. at 731).)

This problem with Jacoby's opinions is exacerbated by the fact that GSL appears to be calling Jacoby as the case "storyteller" and seeks to have Jacoby present the "facts" as Jacoby interprets them, interpret witnesses motivation, and judge their credibility, none of which is permitted of an expert. *See In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) ("An expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."); *see also Waite, Schneider, Bayless & Chesley Co., L.P.A.*

---

[6] Jorgensen Dep. Ex. 213 is attached hereto as Ex. 7.

7

*v. Davis*, 253 F. Supp. 3d 997, 1013 (S.D. Ohio 2015) ("The jury is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence, and permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury.") (quoting *Siring v. Oregon State Bd. of Higher Ed.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)); *Mar Oil Co. v. Korpan*, 973 F. Supp. 2d 775, 786 (N.D. Ohio 2013) ("An expert cannot testify about a witness' credibility. The jury, not the expert, evaluates credibility.") For example, Jacoby's speculates about what witnesses "probably" thought (Jacoby Supp. Rep. at 8); what the legal strategy "might" have been (*id.* at 8); and what "seems self-evident" to Jacoby (*id.* at 7.) Similarly, Jacoby's Rebuttal Report is reciting the facts as Jacoby interprets them based on the evidence he reviewed. (*See, e.g.,* Jacoby Rebuttal Rep. at 6 (summarizing emails), 9 (summarizing testimony and facts), 10 (explaining what GSL said to Baltagi), 11 (summarizing GSL's warehouse tour). It is troubling enough that this is outside the permitted role of an expert, but the prejudice is compounded by the issue that Jacoby's underlying facts are wrong.

For all of these reasons, Jacoby's report and opinions are unreliable, speculative and based on inaccurate and/or incomplete information, and should be excluded. *See Buck v. Ford Motor Co.*, 810 F.Supp.2d 815, 839, 852 (N.D. Ohio 2011) ("Ford asserts that no such testimony exists, and neither Buck nor Sero has identified where in the record any witness made this statement. I therefore find that Sero cannot rely on this [expert] witness testimony to rule out driver error."); *Birge v. Dollar Gen. Corp.*, No. 04-2531 B/P, 2006 U.S. Dist. LEXIS 97192, at *12–16 (W.D.Tenn. Sept. 25, 2006) (excluding expert opinion "because [the] opinion [was] based on insufficient and inaccurate information" and was therefore "highly speculative."); *Multimatic, Inc. v. Faurecia Interior Sys. USA*, 358 F. App'x 643, 654 (6th Cir. 2009) (affirming exclusion of an

expert's "utterly speculative" opinion which "assume[]d facts without [] support for those assumptions in [the] expert report or elsewhere in the record.").

### 3. Jacoby Outright Speculates in Reaching his Opinions

Jacoby's report is further riddled with speculative statements. For example, Jacoby posits that "certain XPO employees **may or may not** have conspired with Baltagi" despite no citations or evidentiary support for such a statement. (Jacoby Rep. at 4 (emphasis added).) Jacoby's report even includes outright speculative statements such as:

- "Misleading GSL/Paladin by giving Hodgson a tour of the facility and representing it as being managed by XPO and himself as an authorized agent – **were other XPO representatives present or aware of this?**" (Jacoby Rep. at 24 (emphasis added).)
- "Implicitly accepting Adkins' terms of escrow in an email chain – Baltagi did not cc any XPO employees, **but were any on bcc or aware of it?**" (*Id.* at 24 (emphasis added).)
- "Receiving and implicitly accepting falsified warehousing receipts from Jason Adkins for GSL tires at the Houston facility – **were any XPO employees aware of the documents?**" (*Id.* (emphasis added).)
- "Facilitating fraud by signing false security interest letters so other lenders such as Vecron and Abington would release the funds – **did any other XPO employees help produce or deliver these?**" (*Id.* at 25.)

Jacoby even admitted that he was speculating:

- "Q: **But that's speculating**. A: **Yes**, and that's why I said – that's why I said in the sentence could have been particularly useful. It depends on how the exit interview went obviously." (Jacoby Dep. at 198 (emphasis added).)
- "Q: **But you're speculating about that, right**? A: **Yes.** I'm just explaining why if I were Great Southland I might not be too suspicious of this document." (*Id.* at 239-40 (emphasis added).)
- "Q: . . . The causal effect here, **you're speculating, right**? A: **Yes**." (*Id.* at 277. (emphasis added).)

Jacoby's repeated tendency toward speculation threatens unfair prejudice to XPO and, as a result, his testimony should be excluded. *See Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 450 (6th Cir. 2007) (expert testimony may not be based on speculation and instead facts must find support in the record).

9

### C. Jacoby's Opinions are Inappropriate Legal Conclusions

Jacoby's opinions are also riddled with inappropriate legal conclusions. *See Navarro v. P&G*, No. 1:17-cv-406, 2021 U.S. Dist. LEXIS 43140, at *32 (S.D. Ohio Mar. 8, 2021) ("[T]he principle that an expert may not make legal conclusions is indeed well established.") (citation omitted). For example, Jacoby opines:

- "Komsky says that Forwarding and Logistics are not separate legal entities. . . . but according to the company's SEC filings XPO Global Forwarding Inc. is a subsidiary At (*sic*) one point he characterizes XPO Global Forwarding as a cost center, which is typically different than a for-profit legal subsidiary." (Jacoby Rep. at 13.)
- "XPO Legal should have asked the Audit Committee to establish an Internal Audit Committee[.]" (*Id.* at 15.)
- "[T]his sloppiness may constitute a violation of Section 404 of Sarbanes-Oxley[.]" (*Id.* at 17.)
- "It's difficult to imagine there was ever an evaluation of safeguards, given the series of events that unfolded at XPO while this fraud played out. SOX 302c stipulates that the signing officers 'have evaluated the effectiveness of the issuer's internal controls. . . .' (SOX p33)" (*Id.* at 17.)
- "XPO may be at risk of failure to disclose legal and financial risk to investors[.]" (*Id.* at 22.)
- "The legal language [of Baltagi's independent contractor agreement] was very thin[.]" (*Id.* at 24.)
- "The documents were authorized by XPO since they were acknowledged by a bonafide XPO employee through an official XPO email account." (Jacoby Rebuttal at 13.)

Jacoby's legal conclusions disguised as expert opinions are inappropriate and provide an additional basis for the exclusion of his testimony.

### III. CONCLUSION

For the foregoing reasons the Court should exclude in full the opinions of David Jacoby.

Respectfully submitted,

*/s/ Martha Brewer Motley*
Kimberly Weber Herlihy (0068668)
Martha Brewer Motley (0083788)

10

        Thomas J. Whaling (0096430)
        Erica M. Rodriguez (0098711)
        Vorys, Sater, Seymour and Pease LLP
        52 East Gay Street, P. O. Box 1008
        Columbus, OH 43216-1008
        Phone: (614) 464-8283
        Fax: (614) 719-5021
        Email: kwherlihy@vorys.com;
        mbmotley@vorys.com
        tjwhaling@vorys.com; emrodriguez@vorys.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2021 a true and accurate copy of the foregoing Motion to Exclude Expert was sent to counsel of record via the Court's ECF system and to Mr. Baltagi and Mr. Adkins, via regular mail, at:

Afif Baltagi
2308 Nantucket Drive, Apt. C
Houston, TX 77057

Jason Adkins
885 Sternberger Road
Jackson, Ohio 45640

        */s/ Thomas J. Whaling*
        Thomas J. Whaling (0096430)