UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SOUTHLAND LIMITED, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:17-CV-00719 |
| | : | |
| v. | : | |
| | : | JUDGE MORRISON |
| LANDASH CORPORATIONS, *et al.* | : | |
| | : | MAGISTRATE JUDGE JOLSON |
| Defendants. | : | |

**PLAINTIFF GREAT SOUTHLAND LIMITED'S BRIEF IN OPPOSITION TO XPO'S MOTION IN LIMINE NO. 4 (DOC NO. 229) TO PRECLUDE GSL FROM CALLING BRAD JACOBS OR CATHERINE FRIEDMAN AS A WITNESS AND TO EXCLUDE THE JACOBY SUPPLEMENTAL REPORT**

**I.      INTRODUCTION**

Defendants XPO Logistics, Inc. and XPO Global Forwarding, Inc. (collectively "XPO") assert that Plaintiff Great Southland Limited ("GSL") should be barred from calling XPO's CEO, Brad Jacobs, or his former assistant, Catherine Friedman, as witnesses at trial. XPO makes this argument based upon this Court's ruling in the matter of *Abington Emerson Capital, LLC v. Adkins, et al.*, Case No. 2:17-cv-00143. In that matter, this Court held that the testimony of Mr. Jacobs and Ms. Friedman as to Star Funding was not relevant to show "a potential cover-up" as alleged by Abington. *See* Abington ECF No. 455 at 20. This Court held that because Mr. Jacobs testified that he had no knowledge regarding the Star Funding issue, he had no information that would make a cover-up more or less probable than it would be without the evidence. *Id*. at 21.

However, the Court's ruling in Abington does not preclude GSL from calling Mr. Jacobs or Ms. Friedman as witnesses in this matter. GSL intends to use their testimony for a different purpose. In the case at bar, GSL offers Mr. Jacobs' and Ms. Friedman's testimony to establish, among other things, that XPO was negligent in its hiring, supervision, and management of its employee, Afif Baltagi. Mr. Jacobs' and Ms. Friedman's testimony, including their claimed ignorance, regarding the issues with Star Funding is relevant as it demonstrates the lack of supervision and safeguards that were in place as to Baltagi. Testimony as to their alleged ignorance – when issues with Baltagi were directed to their attention – makes the fact the XPO negligently supervised and managed Baltagi more probable than it would be without that evidence. Unlike the case in Abington, XPO's expert witness, David Jacoby, relied upon the testimony of Ms. Friedman and Mr. Jacobs in reaching the conclusions and opinions contained in his supplemental report.

Naturally, this distinction is important which is why XPO seeks to exclude Mr. Jacoby's supplemental report. If the report is stricken, then the testimony upon which it is based becomes easier for XPO to challenge. To that end, XPO incorrectly asserts that the opinions expressed by Mr. Jacoby are speculative and lacking in foundation. In making this argument, XPO conflates the admissibility of an expert's opinion with the weight that is given to that opinion by the trier of fact. Expert witnesses are able to reach conclusions and present opinions based upon their observations of the evidence before them. Mr. Jacoby did this in his supplemental report, relying upon the deposition testimony of Mr. Jacobs and Ms. Friedman to reach his conclusions. If XPO disagrees with the opinions in the supplemental report, it will have the opportunity to cross-examine Mr. Jacoby at trial. Ultimately, the trier of fact will determine what weight should be

given to Mr. Jacoby's supplemental report. However, the fact that XPO disagrees with its conclusions, does not provide a basis to bar the use of the supplemental report.

## II. LAW AND ARGUMENT

### A. The Testimony of Brad Jacobs and Catherine Friedman Is Relevant To Show That XPO's Lack Of Knowledge and Oversight Of Afif Baltagi Allowed Baltagi To Facilitate Jason Adkins' Fraud Scheme

Federal Rule of Evidence 402 bars admission of irrelevant evidence. Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Rule 403 permits courts to exclude relevant evidence if its probative value is substantially outweighed by a danger of, *inter alia*, unfair prejudice, confusing the issues, and misleading the jury." Fed. R. Evid. 403. *United States v. Valueland Auto Sales, Inc*., No. 2:13-cr-143, 2015 U.S. Dist. LEXIS 8091, *3 (S.D. Ohio January 22, 2015).

"Relevance is an "extremely liberal" standard, allowing all evidence not otherwise excluded that "has any tendency to make a fact more or less probable than it would be without the evidence" and is of consequence to a claim before the court.*" In re. Laurel Valley Oil Co*., No. 05-64330, 2015 Bank. LEXIS 2470, *14 (U.S. Bankruptcy Court N.D. Ohio July 28, 2015) citing Fed. R. Evid. 401; *Dortch v. Fowler*, 588 F. 3d 396, 400-01 (6th Cir. 2009).

As set forth above, XPO argues, based upon this Court's ruling in *Abington*, that Mr. Jacobs' lack of relevant knowledge as to the Star matter should preclude him from being called as a witness at trial in this matter. However, the lack of knowledge of Mr. Jacobs and Ms. Friedman bolsters a portion of GSL's claim, that XPO negligently managed and supervised its employee, Baltagi. In short – ignorance is no defense. Indeed, it establishes XPO's business

model is premised on the refusal to properly supervise their employees thereby allowing Baltagi to perpetuate this fraud scheme with Adkins.

In Count IX of GSL's Amended Complaint, GSL alleges that Baltagi acted negligently in making several knowingly false representations to GSL. *See*, ECF No. 144. GSL also asserts that XPO negligently hired, managed and supervised its employee, Baltagi, and therefore failed to protect its customers, such as GSL from Baltagi's acts. *Id*., ¶227. XPO's failure to properly supervise and manage Baltagi caused tens of millions of dollars in damages to be incurred by lenders such as GSL that were caught up in the Adkins Ponzi scheme. *Id*.

As XPO admits, the ignorance of Mr. Jacobs and Ms. Friedman as to the issues involving Star Funding cannot be disputed. Their ignorance is of consequence to GSL's claim that XPO negligently supervised and managed its employee, Baltagi. Thus, the testimony of Mr. Jacobs and Ms. Friedman as to their lack of knowledge regarding the Star matter is clearly relevant, as it makes it more probable that one of the key facts of the case, that XPO failed to properly manage and supervise Baltagi, is true.

Not only is the testimony as to the lack of knowledge of Mr. Jacobs and Ms. Friedman relevant, its probative value far outweighs any potential unfair prejudice or confusion. Their testimony is probative as it demonstrates XPO's inattention and lack of oversight of its employees. The testimony of Mr. Jacobs and Ms. Friedman would not unfairly prejudice XPO or confuse any issues. Instead, their lack of knowledge would provide information that would aid the jury in making a determination as to GSL's negligence claim against XPO.

By moving to exclude the testimony of Mr. Jacobs and Ms. Friedman, XPO is seeking to bar highly relevant evidence that provides insight into a key part of GSL's claims against XPO. Moreover, GSL's expert David Jacoby relies upon their deposition testimony in reaching the

opinions detailed in his supplemental report. Mr. Jacoby properly relied upon Mr. Jacobs' testimony as experts are permitted to rely upon facts in the record to support their opinions. *Navarro v. P & G*, No. 1:17-cv-406, 2021 U.S. Dist. LEXIS 43140, *28 (S.D. Ohio March 8, 2021). Mr. Jacoby testified that the lack of supervision and accountability on the part of XPO for the actions of its employee "enabled Baltagi to facilitate Adkins' fraud against GSL." *See* Exhibit 3, pg. 6 attached to XPO's motion in limine. By seeking to bar the testimony of Mr. Jacobs and Ms. Friedman, XPO is impermissibly trying to bar Mr. Jacoby's expert from opining as to what their lack of knowledge means in the context of GSL's claim that XPO failed to properly manage and supervise Baltagi.

### B. The Supplemental Expert Report Of GSL's Expert, David Jacoby Should Not Be Barred As The Opinions Contained In His Report Are Based Upon Facts In The Record.

Federal Rule of Evidence 702, which governs the use of expert testimony, states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule "imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (citing *Daubert v. Merrel Dow Pharms*., 509 U.S. 579 (1993)). The trial court's gatekeeping function applies to all expert testimony. *Id*. at 147. "The requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation – i.e, 'good grounds' based on what is known." *In re Scrap Metal Antitrust Litig*., 527 F. 3d 517, 529

(6th Cir. 2008) citing *Daubert*, 509 U.S. 590. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say unsupported speculation." *Id*., 529-530 citing Fed. R. Evid. 702.

"Rejection of expert testimony is the exception, rather than the rule," and the Sixth Circuit has held that "we will generally permit testimony based on allegedly erroneous facts when there is some support for them in the record." *Scrap Metal*, 527 F. 3d 530, citing *Quiet Tech, DC-8, Inc. v. Hurel-Dubois UK Ltd*., 326 F. 3d 1333, 1345 (11th Cir. 2003). In *Jahn v. Equine Services*, 233 F. 3d 382 (6th Cir. 2000), the Court of Appeals reversed a decision by the District Court holding inadmissible an expert's testimony. The Court explained that although the expert's opinions "may very well be 'shaky,' because the opinions were based on facts in the record, and were not "assumptions" or "guesses," challenges merely went to the accuracy of the conclusions, not the reliability." *Id*. citing Jahn at 390-393. "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. However, mere 'weaknesses in the factual basis of an expert witness' opinion…bears on the weight of the evidence rather than on its admissibility.'" *Id*. quoting *United States v. L.E. Cooke Co*., 991 F. 2d 336, 342 (6th Cir. 1993). "The trier of fact makes determinations of credibility and the weight to be given to the evidence." *Coleman v. Warden, Trumbull Corr. Inst*., No. 2:12-CV-1213, 2014 U.S. Dist. LEXIS 61917, *27-*28 (S.D. Ohio May 5, 2014) sighting *State v. DeHass*, 10 Ohio St. 2d 230, paragraph one of the syllabus (1967).

In the case at bar, GSL's expert David Jacoby analyzed the deposition testimony of Brad Jacobs to provide an opinion as to what degree XPO bore responsibility for the actions of Baltagi, in his capacity as XPO's manager of its Houston facility, in furtherance of the Ponzi

scheme.  *See* Exhibit 3 attached to XPO's motion in limine, pg. 3.  Despite XPO's assertions to the contrary, in reaching the conclusions contained in his report, Mr. Jacoby relied only upon the deposition testimony of Mr. Jacobs and Ms. Friedman regarding their failure to review the correspondence related to the Star Funding dispute.

XPO argues, based upon certain language contained in the supplemental report on pages 7 and 8, that Mr. Jacoby's opinions were based upon speculation.  However, as the Sixth Circuit has made clear, the shakiness or weakness of the conclusions contained in an expert's report would not bear upon the admissibility of the report, as long as the conclusions are based upon facts in the record. Any challenges to such a report would be made as to the accuracy of the report, not its reliability.

In the case at bar, the conclusions contained in Mr. Jacoby's supplemental report are clearly reliable as they are based upon the deposition testimony of Mr. Jacobs.  If XPO believes that Mr. Jacoby's supplemental report is inaccurate, it will presumably challenge his opinions at trial on cross-examination and through the testimony of its own witnesses. However, XPO's contention that Mr. Jacoby's opinions are questionable does not provide a basis to bar his supplemental report.

Similarly, XPO cherry picks certain portions of Mr. Jacoby's deposition transcript to argue that his opinions are speculative.  As to the issue of plausible deniability on the part of XPO as to actions of its employees, XPO cites the deposition testimony of Mr. Jacoby that he believed that employees of XPO such as Muzi, Shook, Oliver and Baltagi were evasive in their depositions. *See*, ECF No. #229, pg. 8. As he states in his testimony Mr. Jacoby provided his analysis based upon his review of facts in the record, in this instance the deposition testimony Muzi, Shook, Oliver and Baltagi.  *Id*.  Moreover, he testified that his conclusion was based upon

his "observation" of the number of times those individuals responded to depositions questions by testifying that they did not know or remember the answer. *Id.*, at 9. Mr. Jacoby's opinions and conclusions were correctly based upon his observations and review of the facts in the record.

XPO also takes issue with the fact that Mr. Jacoby states on page 7 of his rebuttal report, that "Catherine Friedman effectively ran XPO by representing herself as (Mr. Jacobs) without limitation." Although XPO argues that this opinion is "inaccurate" and "reckless", Mr. Jacoby clearly states in his report that he relied upon Mr. Jacobs' deposition testimony in arriving at that opinion. *See* Exhibit 3 attached to XPO's motion in limine, pg. 7, Section 2.1. As for XPO's claim that Mr. Jacoby gave the opinion that XPO's former COO, Troy Cooper, should have been copied on a set of emails sent by Ms. Friedman, that claim is untrue. Regarding Mr. Cooper, Mr. Jacoby noted that he wasn't copied on those emails. *Id.*, pg. 8, Section 2.3.

XPO conflates the admissibility of Mr. Jacoby's Supplemental Report with the weight that it will be given by the trier of fact. The conclusions contained in the supplemental report were based upon evidence that is in the record, the deposition testimony of Mr. Jacobs. Mr. Jacoby relied upon his testimony to reach his opinions and conclusions, including his conclusion that XPO's lack of oversight of its employee Baltagi allowed him to facilitate Adkins' fraud against GSL. If XPO disagrees with Mr. Jacoby's opinions, it can challenge his testimony on cross-examination and through the testimony of its own witnesses at trial. However, XPO's argument that Mr. Jacoby's opinions are shaky or incorrect, does not form a basis for excluding the supplemental report.

## III. CONCLUSION

Based on the foregoing, it is respectfully requested that the Court deny XPO's motion to preclude GSL from calling Brad Jacobs or Catherine Friedman as a witness and to exclude the supplemental report of David Jacoby.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

*/s/ Matthew S. Brown*
Matthew S. Brown (0077687)
Anthony T. Betta (0096070)
Email: mbrown@cpmlaw.com
Email: abetta@cpmlaw.com
950 Goodale Boulevard, Suite 200
Columbus, Ohio 43212
Tele: (614) 228-6135
Fax:  (614) 221-0216

*Counsel for Plaintiff Great Southland Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December 2021, a true and correct copy of the foregoing was filed and served electronically via the Court's CM/ECF System upon those who are registered to receive electronic notice.  I have also served the following parties via U.S. Mail at the addresses below:

| | | |
|---|---|---|
| Jason E. Adkins | Landash Corporation | Afif Baltagi |
| 885 Sternberger Road | 885 Sternberger Road | 2308 Nantucket Drive, Apt. C |
| Jackson, Ohio 45640 | Jackson, Ohio 45640 | Houston, TX  77057 |

*/s/ Matthew S. Brown*
Matthew S. Brown

ATB/ATB/02452978.1
030705.000004