UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREAT SOUTHLAND LIMITED, | : | |
| | : | |
| Plaintiff, | : | CASE NO. 2:17-CV-00719 |
| | : | |
| v. | : | |
| | : | JUDGE MORRISON |
| LANDASH CORPORATIONS, et al. | : | |
| | : | MAGISTRATE JUDGE JOLSON |
| Defendant. | : | |

**PLAINTIFF GREAT SOUTHLAND LIMITED'S BRIEF IN OPPOSITION TO XPO'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DAVID JACOBY**

I.  **INTRODUCTION**

Defendants XPO Logistics, Inc. and XPO Global Forwarding, Inc. (collectively "XPO") assert that the expert testimony of David Jacoby should be excluded at trial. XPO's motion is essentially a dispositive motion by elimination of necessary expert testimony. Jacoby establishes the many direct failures of XPO, that Baltagi was acting in the course and scope of his employment, and that XPO failed to properly manage and supervise Baltagi. XPO ignores the dispositive nature of their Motion and instead claim it is a challenge to Jacoby's qualifications. However, those qualifications far exceed the standard for admissibility.

Substantively, XPO's Motion fails because Jacoby is sufficiently qualified to render an expert opinion as to, among other things, XPO's organizational structure, XPO's business and the services it provides, the fact that the events at issue are within the scope of XPO's busines, Baltagi's employment, his duties and responsibilities, his authority, his acting as an agent, Baltagi acting in the course and scope of his employment, that GSL fairly relied on Baltagi as XPO's agent, and XPO's negligent supervision of Baltagi. Indeed, the majority of Jacoby's

experience is in the area of supply chain management and transportation, the area in which XPO operates. His experience includes organizational studies, which qualifies him to render an opinion as to how weaknesses in XPO's organizational structure prevented XPO from properly supervising its employee Baltagi, which allowed him to facilitate the Adkins scheme.

Jacoby properly relied upon facts in the record, including the deposition of many XPO employees, to reach his opinions regarding XPO's busines operations and its failure to properly supervise and manage Baltagi. XPO, however, conflates the admissibility of an expert's opinion with the weight to be given to it by the trier of fact. Expert witnesses can reach conclusions and present opinions based upon their observations of the evidence before them. XPO can disagree with Jacoby's conclusions and can challenge his testimony on cross-examination and through the testimony of its own witnesses. However, the fact that XPO disagrees with Jacoby's opinions does not provide a basis to preclude his expert testimony.

## II. ARGUMENT AND LEGAL AUTHORITIES

### A. XPO'S Motion Is A Dispositive Motion Filed Several Months Out Of Time

XPO's motion to bar Mr. Jacoby's testimony is essentially a dispositive motion.[1] If granted GSL would be precluded from offering expert testimony in support of its claim that the events at issue were within the scope of XPO's business, that Baltagi was acting in the scope of his employment, that Baltagi was XPO's agent and had authority to act on XPO's behalf, that customers like GSL reasonably relied on Baltagi being XPO's agent, that XPO ratified Baltagi's acts, and that XPO negligent managed and supervised him – among other things. As such, this would essentially dispose of the case.

---

[1] It is noted that XPO challenged Abington Emerson Capital's expert witnesses in their Motion for Summary Judgment thereby affording the parties to properly brief the dispositive issue. The pretrial motions permitted by this court were limited to 10 pages and did not permit replies, which evinces that motions of this nature are improper at this time.

On May 19, 2021, the Court entered an Order setting a dispositive motion deadline of July 19, 2021. *See*, ECF No. 196. XPO's motion to preclude Jacoby's testimony is a dispositive motion filed in the guise of a motion in limine, which is untimely and should be denied.

**B. In The Alternative, XPO's Motion Should Be Denied As David Jacoby's Expert Testimony Is Admissible**

Federal Rule of Evidence 702, which governs the use of expert testimony, states that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"The Rule 702 analysis proceeds in three stages." *Johns v. CR Bard (In re Davol, Inc.),* Nos. 2:18-md-2846, 2:18-cv-1509, 2021 U.S. Dist. LEXIS 119665, at *52 (S.D. Ohio June 28, 2021) citing *United States v. Rios*, 830 F. 3d 403, 413 (6th Cir. 2016). First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *Id.*, at *52-*53 citing *In re Scrap Metal Antitrust Litig.*, 527 F. 3d 517, 529 (6th Cir., 2008) (quoting Fed. R. Evid. 702).

**(1) Mr. Jacoby Has Sufficient Knowledge To Aid The Trier of Fact**

"The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Id.* at *53 citing *Madej v. Maiden*, 951 F. 3d 364, 370 (6th Cir. 2020) (quoting *Berry v. City of Detroit*, 25 F. 3d 1342, 1351 (6th Cir. 1994). "[T]he only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge

of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact." *Id*. citing *Mannino v. v. Int'l Mfg. Co.*, 650 F. 2d 846, 851 (6th Cir. 1981). A party's expert need only meet the "'minimal qualifications' requirement—not one who could teach a graduate seminar on the subject." *Id*. citing *Burgett v. Troy-Bilt, LLC*, 579 F. App'x 372, 377 (6th Cir. 2014). "An expert's lack of experience in a particular subject matter does not render him unqualified so long as his general knowledge in the field can assist the trier of fact." *Id*. citing *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 40, 446 (6th Cir. 2012).

XPO holds itself out as a leading supply chain partner to blue-chip companies across every major industry, with a sole focus on freight transportation. Jacoby has more than <u>32 years of experience</u> consulting in "**supply chain management**, operations strategy and performance improvement, primarily in the **transportation, logistics**, energy and automotive sectors." *See*, ECF No. 234, Exhibit 1, pg. 4 (Jacoby's Expert Report) (Emphasis Added). Obviously, Jacoby has extensive experience in the supply chain and transportation industry in which XPO operates.

As detailed in his deposition testimony, the majority of Mr. Jacoby's professional engagements have involved freight forwarding and warehouse services. Those engagements include UPS, Chrysler Fiat, CSX, General Motors, FedEx.[2] *See* Exhibit 1, 29-30; 34-35; 37-38; 40-41; and 44-45. Several of those engagements have also involved speaking with warehouse managers. *Id*., 50.

Jacoby has also done several organizational studies for companies that have retained his services. *Id*., 59:4-10. When asked what the organizational studies covered, Jacoby responded:

> A. They usually—oh, Iron mountain as well. They involve writing job descriptions and posting job requisitions, sometimes actively hiring staff on behalf of the company

---

[2] Relevant portions of David Jacoby's deposition transcript are attached as Exhibit 1.

involved, drawing organization charts, explaining the relationship between people and their responsibilities, who should do what exactly and who should report to whom.

*Id.*, 11-19.

Jacoby' experience in the logistics and transportation industry, including his work doing organizational studies gives him more than a sufficient knowledge base to render the opinions set forth in his report as to XPO's organizational structure, XPO's business and the services it provides, the fact that the events at issue are within the scope of XPO's busines, Baltagi's employment, his duties and responsibilities, his authority, his acting as an agent, Baltagi acting in the course and scope of his employment, that GSL fairly relied on Baltagi as XPO's agent, and XPO's negligent supervision of Baltagi. Jacoby notes, among other opinions, "Baltagi was doing his duty at XPO during the course of the fraud…a combination of a Lack of Clear organization Roles and Responsibilities, Inadequate Safeguards and Precautionary Processes, Imbalanced Incentives and Measurements, a Lack of HR Development & Training Processes, and Inadequate Supervision enabled him to facilitate Adkins fraud against GSL." *See,* ECF No. 234, Exhibit 1, pg. 28. Based upon his prior experience with transportation and logistics companies, David Jacoby is qualified to give opinions that he has proffered in this case.

Jacoby has more than the minimal qualifications necessary to analyze and render an opinion as to XPO's organizational structure, business operations, employee conduct, and employee supervision. His testimony will aid the trier of fact on the issues that will be presented to the jury in this case.

**(2) Jacoby's Testimony is Relevant To The Issues In This Case**

Expert testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." *Id*. at *53-*54 citing *Bradly v. Ameristep, Inc*., 800 F. 3d 205, 208

(6th Cir. 2015)(quoting *United States v. Freeman*, 730 F. 3d 590, 599-600 (6th Cir. 2013)); Fed R. Evid. 702 (a). "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *United States v. Lavictor*, 848 F. 3d 428, 442 (6th Cir. 2017) citing *Messick v. Novartis Pharms* Corp., 747 F. 3d 1192, (9th Cir. 2014).

In the case at bar, Jacoby opines on the numerous issues in this case. For example, he concludes "Baltagi was not employed by XPO Global Forwarding, as Komsky claimed." *See* ECF No. 234, Exhibit 1, p. 14. He provides a detailed opinion on Baltagi's roles and responsibilities. *Id*., p. 17. Such roles are consistent with the roles and duties that XPO has to its customers. *Id*. "These services were all being performed by Baltagi in the course and scope of his job duties as XPO's Branch Manager." *Id*. However, XPO is not challenging the ultimate opinions offered, presumably as it is obvious such goes to weight rather than admissibility.[3]

Though not directly at issue, this testimony is relevant as it deals directly with the issues that are to be tried and presented to the jury in this case.

**(3) Jacob's Testimony Is Based Upon Facts In The Record**

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (citing *Daubert v. Merrel Dow Pharms*., 509 U.S. 579 (1993)). The trial court's gatekeeping function applies to all expert testimony. *Id*. at 147. "The requirement that an expert's testimony be reliable means that it must be "supported by appropriate validation – i.e, 'good grounds' based on what is known." *In re Scrap Metal Antitrust Litig*., 527 F. 3d 517, 529 (6th Cir. 2008) citing *Daubert*, 509 U.S. 590. "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine

---

[3] Due to space limitations (10 pages) and the fact that XPO is challenging Jacoby's qualifications generally rather than specific opinions, GSL is only highlighting several opinions reflective of Jacoby's overall qualifications.

-6-

whether it rests upon a reliable foundation, as opposed to, say unsupported speculation." *Id.*, 529-530 citing Fed. R. Evid. 702.

"Rejection of expert testimony is the exception, rather than the rule," and the Sixth Circuit has held that "we will generally permit testimony based on allegedly erroneous facts when there is some support for them in the record." *Scrap Metal*, 527 F. 3d 530, citing *Quiet Tech, DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1345 (11th Cir. 2003). In *Jahn v. Equine Services*, 233 F. 3d 382 (6th Cir. 2000), the Court of Appeals reversed a decision by the District Court holding inadmissible an expert's testimony. The Court explained that although the expert's opinions "may very well be 'shaky,' because the opinions were based on facts in the record, and were not "assumptions" or "guesses," challenges merely went to the accuracy of the conclusions, not the reliability." *Id.* citing *Jahn* at 390-393. "An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record. However, mere 'weaknesses in the factual basis of an expert witness' opinion…bears on the weight of the evidence rather than on its admissibility.'" *Id.* quoting *United States v. L.E. Cooke Co.*, 991 F. 2d 336, 342 (6th Cir. 1993). "The trier of fact makes determinations of credibility and the weight to be given to the evidence." *Coleman v. Warden, Trumbull Corr. Inst.*, No. 2:12-CV-1213, 2014 U.S. Dist. LEXIS 61917, *27-*28 (S.D. Ohio May 5, 2014) sighting *State v. DeHass*, 10 Ohio St. 2d 230, paragraph one of the syllabus (1967).

In the case at bar, Jacoby's opinions are supported by facts in the record. He relies on 14 depositions, Baltagi's personnel file and W-2, many emails, XPO's Code of Conduct, among many other documents. *See*, ECF No. 234, Exhibit 1, pp. 6 – 7. For example, in finding "Lack of Clear Organizational Roles and Responsibilities", Jacoby cited Baltagi's offer letter which does not contain a job description. *Id.*, p. 14. He cites the deposition of Mr. Musetti and Dave Hodgson for the proposition that vendors and customers did not know the difference between

XPO Global Forwarding and XPO Logistics. *Id*. Jacoby notes that while XPO's corporate representative, Eugene Komsky, testified that XPO Global Forwarding and XPO Logistics are not separate entities, the XPO Global Forwarding's SEC filings indicate that it is a subsidiary. *Id*. Based upon deposition testimony and facts in the record, Jacoby concluded that at the time of the fraud the two XPO entities were being run without distinction between them. As evidence for that conclusion, Komsky testified that Baltagi was employed by XPO Global Forwarding, even though Baltagi's hiring and employment documents along with his paychecks indicate that he was employed by XPO Logistics. *Id*.

By way of further example, relative to his opinion regarding "Collective Abrogation of Accountability," Jacoby relied on Mr. Jorgenson's deposition and exhibits to conclude that most managers let others deal with problems. *Id*., pg. 15. He cites a series of emails regarding the Star Funding issue to which there were never definitive response along with emails indicating that XPO took direction from Adkins and his counsel. *Id*., pp. 15 – 16. He also cited the deposition of Catherine Friedman, Brad Jacobs' assistant, that indicate that legal correspondence was not shared with Jacoby, she responded to emails using Mr. Jacobs' email account, and that she did not follow up on emails that she forwarded regarding the Star Funding issue. *Id*., 16.

Furthermore, in arriving at his opinion that there was "Loose Compliance with Established Policies", Jacoby points out that Ms. Friedman had never seen XPO's Code of Business Ethics, and Mr. Komsky testified that Baltagi violated several provisions of the Code but was never punished. *Id*., pg. 20. Mr. Jacoby also found that XPO had "No Audits or Surveillance Systems", citing the fact the Henrik Jorgensen testified that he never travelled to Houston to investigate the Star Funding issue, never asked anyone at the Houston facility about the problem, never conducted an audit and never counted any tires. *Id*. He concluded that lack of surveillance or inspection of Baltagi allowed him to issue documents that XPO claimed to be

unauthorized without copying anyone at XPO and allowed him to hide financial discrepancies. *Id.* Moreover, Jacoby cited the testimony of Dominick Muzi that XPO does not audit warehouse documentation or bills of lading to support his belief that this created a security flaw that Baltagi exploited. *Id.*

Jacoby recognized a "Lack of Training and Employee Feedback", relying upon the deposition testimony of Ian Oliver that Baltagi was never given training. *Id.*, pg. 24. Jacoby concluded that that there was "No Discipline for Breaches" based on the testimony of Dominick Muzi that he was unaware of anyone at XPO ever being reprimanded. *Id.*, pg. 25. Under the section entitled "No Regional Management", Mr. Jacoby cited the fact that there was no regional supervision of Mr. Baltagi in Houston, as no supervisor was in Houston aside from an occasional day trip. And in the section entitled "Inconsistent Supervision due to High Turnover," Jacoby references the fact that Baltagi had a few different managers during the time that he managed the Houston facility. *Id.*, pg. 27.

Similarly, in his rebuttal to the report prepared by XPO's expert Gerald Sabino, in refuting Mr. Sabino's conclusion that Roadmaster was at fault because they were the owner of the Houston warehouse, Jacoby pointed out that the actual ownership of the warehouse was irrelevant because XPO represented that it assented to the terms of the entire transaction. In making that assertion Jacoby relied upon the undisputed fact that Baltagi led Mr. Hodgson on a tour of the Houston facility in February 2016 along with Baltagi's confirmation of the terms of the Landash transaction via email in March 2016. *See* ECF No. 234, Exhibit 2, pg.6, paragraph 2 (Jacoby's Expert Rebuttal Report).

Furthermore, in section 3.1.2 of his rebuttal report, Jacoby concluded that GSL acted reasonably in entrusting XPO with the details of the transaction. In support of his opinion, Jacoby cited Mr. Hodgson's testimony that GSL knew that by reputation XPO was a large

company, along with his testimony that Jason Adkins brought XPO into the deal. *Id*., pg. 9. He also cited the fact that Mr. Hodgson travelled to XPO's Houston facility where he was given a tour by XPO's employee Baltagi, who managed the facility for XPO. *Id.*

GSL's expert David Jacoby permissibly relied upon facts in the record to support his expert opinions. The facts upon which he relied included the deposition testimony of several XPO employees who were superiors of the manager of XPO's Houston facility, Baltagi. Jacoby's review of the record led him to the conclusions and opinions that are expressed in his reports (original, rebuttal, and supplemental).

The trier of fact is entitled to weight Mr. Jacoby's expert opinions. XPO will have the opportunity to challenge his opinions through cross-examination and the testimony of its own witnesses. However, XPO's disagreement with Jacoby's conclusions is not an argument to support the exclude Mr. Jacoby's expert testimony.

**CONCLUSION**

Based on the foregoing, it is respectfully requested that the Court deny XPO's motion to exclude the expert testimony of GSL's expert David Jacoby.

Respectfully submitted,

CARLILE PATCHEN & MURPHY LLP

*/s/ Matthew S. Brown*
Matthew S. Brown (0077687)
Anthony T. Betta (0096070)
Email: mbrown@cpmlaw.com
Email: abetta@cpmlaw.com
950 Goodale Boulevard, Suite 200
Columbus, Ohio 43212
Tele: (614) 228-6135
Fax:  (614) 221-0216

*Counsel for Plaintiff Great Southland Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December 2021, a true and correct copy of the foregoing was filed and served electronically via the Court's CM/ECF System upon those who are registered to receive electronic notice. I have also served the following parties via U.S. Mail at the addresses below:

| | | |
|---|---|---|
| Jason E. Adkins | Landash Corporation | Afif Baltagi |
| 885 Sternberger Road | 885 Sternberger Road | 2308 Nantucket Drive, Apt. C |
| Jackson, Ohio 45640 | Jackson, Ohio 45640 | Houston, TX 77057 |

                                                    */s/ Matthew S. Brown*
                                                    Matthew S. Brown