IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GREAT SOUTHLAND LIMITED,**

                **Plaintiff,**

        vs.

**LANDASH CORPORATION, et al.,**

                **Defendants.**

Case No.: 2:17-cv-00719

Judge: Hon. Sarah D. Morrison

Magistrate Judge: Hon. Kimberly A. Jolson

**XPO'S REPLY IN SUPPORT OF ITS MOTION TO
EXCLUDE EXPERT TESIMONY OF DAVID JACOBY**

GSL's opposition brief largely fails to address the flaws in the expert reports and opinions of its "supply chain management" expert, David Jacoby. Instead, it argues that: (1) XPO's motion to exclude was untimely; (2) Jacoby is generally qualified as an expert on all things transportation because he has done third-party consulting on "supply chain management" for companies, including some that relate to transportation; and (3) Jacoby can summarize the facts for the jury. All of these arguments fail and GSL's expert should be excluded in full.

    **A.**    **XPO's Motion is Timely**

GSL first argues that XPO's Motion to Exclude is untimely because it is "essentially" a dispositive motion. (ECF No. 432, Opp'n at 2.) GSL ignores the case schedule, which set a deadline for filing both "Motions *in limine*" and "all pre-trial motions." (ECF No. 210).[1] XPO's Motion to Exclude was a timely filed "pre-trial motion" within the scope of the Order. If GSL wanted the Court to set a separate deadline for motions related to experts, it could have and should have asked the Court to do so. And if GSL was confused about whether motions to exclude experts

---

[1] At the request of the parties, and to allow for time to mediate, the Court reset the dates, and XPO timely filed its Motion to Exclude as set forth in the subsequent order. (ECF No. 218.)

1

needed to be filed at the dispositive motion deadline, it should have asked the Court for clarity. It did neither. XPO is not bound by GSL's assumption about (or *post hoc* interpretation of) the case schedule. Tellingly, GSL cites no rule, case law, or court order in support of its argument.

GSL argues that its case is doomed without the testimony of Jacoby, and therefore that XPO's Motion to Exclude is a "dispositive" motion. But GSL's candid admission that Jacoby is necessary to its case does not transform XPO's motion to exclude testimony into a "dispositive" motion, under Rule 56 or otherwise. Indeed, if GSL's argument were correct, a party's mere declaration that a witness or an issue is critical to its case would unilaterally transform any motion threatening the presentation of that witness or that issue at trial into a dispositive one. There is no authority to support such an assertion, and GSL's timeliness argument should therefore be rejected.

**B.    Jacoby is Not Qualified to Opine on the Topics Relevant to this Litigation.**

GSL's Opposition only serves to highlight *XPO's* arguments for *excluding* Jacoby—namely that Jacoby claims expertise over any topic that he has even tangentially encountered in his years as an outside consultant on "supply chain management" issues in a hodgepodge of unrelated industries. In fact, GSL states that Jacoby is "sufficiently qualified to render an expert opinion" on, "among other things," the following topics:

- "XPO's organizational structure"
- "XPO's business and the services it provides"
- "The fact that the events at issue are within the scope of XPO's busines [*sic*]"
- "Baltagi's employment"
- "His duties and responsibilities"
- "His authority"
- "His acting as an agent"
- "Baltagi acting in the course and scope of his employment"
- "That GSL fairly relied on Baltagi as XPO's agent"; and
- "XPO's negligent supervision of Baltagi."

(Opp'n at 1.) GSL argues that Jacoby is qualified to opine on all of these topics because "Jacoby

has more than 32 years of experience consulting in '**supply chain management**, operations strategy and performance improvement, primarily in the **transportation, logistics**, energy and automotive sectors.'"  (Opp'n at 4 (emphasis in original).) When asked during his deposition to define "supply chain management," Jacoby admitted that this phrase describes the lifespan of a product, not the nuance of any one particular industry or any stops along the way:

> Q. [I]f you were invited to an elementary school career day, how would you describe what supply chain operations is? Like how would you describe what your company does if you were in front of a room of fourth graders?
>
> A. Yes, somebody asked me this the other day and I actually sent them some pages from my book, Guide to Supply Chain Management, which included the definition. Supply chain is everything that it takes to get a product from its raw material state to its in consumer, in layman's terms, I would say. And that's only for products, but that's what concerns us here. So it includes logistics, transportation, warehousing, production, and point of sale.

(Jacoby Dep. at 36-37.) And what *does* Jacoby's book say on that topic?  It states,

> Use of the phrase "supply chain" has become widespread. . . Yet many practitioners use key words like logistics, procurement, transportation, and supply chain interchangeably and without a consistent hierarchy, **confusing the supply chain's role with respect to the other functions, and implying that everybody who works in any of those fields is a supply chain practitioner**.

Guide to Supply Chain Management (Economist Books), Jacoby, David Steven (Feb. 25, 2014)(emphasis added). In other words, by Jacoby's own admission, working in logistics, or procurement, or transportation, does not make one a supply chain practitioner expert, just as working as a supply chain practitioner does not make one an expert in logistics, procurement or transportation; these are not interchangeable concepts or functions. Jacoby's self-proclaimed expertise as a "supply chain" practitioner does not mean he has expertise about the operations of a freight forwarder, like XPO Global Forwarding, or even a 3PL warehouse, and he should not be permitted to confuse the jury by blurring the lines between and among these varying areas of expertise by lumping them all under the umbrella of "supply chain management."

Further, the fact that Jacoby has consulted for a few businesses in the transportation industry, but on entirely different topics, illustrates why he is not qualified as an expert here. For example, to support his expertise in warehousing and 3PLs, GSL cites testimony about Jacoby's work with Iron Mountain, the document storage company. (Opp'n at 4-5.) But even a cursory inquiry into that work, which was 20 years ago, reveals that the engagement did not involve the use of a freight forwarder (Jacoby Dep. at 28), and the warehouse receipts related to that engagement were *internal* warehouse receipts because that company ran its own warehouses (*id.* at 32), and, in any case, he does not recall the specific content of those warehouse receipts (*id.* at 33). Iron Mountain is not a freight forwarder, and any experience Jacoby acquired about how Iron Mountain operated twenty years ago does not give him a sound basis to tell the jury he is an expert regarding the operations of XPO, or any other freight forwarding company, now.

Jacoby's other engagements similarly fail to provide him with expertise relevant to this matter. For example, his work for UPS involved how to integrate the operations of an acquired entity that happened to be a freight forwarder, but that engagement did not involve, for example, what the warehouse receipt should say. (Jacoby Dep. at 29-31.) His work with FedEx's freight forwarding arm involved "corporate work related to real estate information systems and other overhead shared costs." (*Id.* at 45.) Again, this has nothing to do with the issues in this case. And when pressed about the issues in this case like, for example, what a freight forwarder would issue in terms of an inspection report (like those Baltagi is alleged to have signed), Jacoby admitted he "couldn't say right now" what types of documents freight forwarders would use. (*Id*. at 229-230.)

How does GSL justify presenting Jacoby as an expert on these topics, given the foregoing? It merely asserts that "[s]everal of those engagements have also involved speaking with warehouse managers." (Opp'n at 4.) This is not nearly enough to make Jacoby an expert. Indeed, the Court

excluded plaintiff's expert witness in a related case, *Kirby Dev., LLC v. XPO Global Forwarding, Inc.*, No. 2:18-CV-500, on a similar basis. (ECF No. 208.) Like the partially-disqualified expert in *Kirby*, Jacoby has no experience advising on the contents of warehouse receipts, inspection reports, or fraud audits. (Jacoby Dep. at 222-223 (testifying that he has not reviewed reports performed by a warehouse intended to report on the condition of goods as they were received at a third-party warehouse); 223-224 (testifying that it is "possible" he has seen a warehouse-issued inspection report but cannot think of an instance); 230 (admitting he does not know what type of inspection report other freight forwarding companies would use); 233 (admitting he does not know what "nonnegotiable" means on warehouse receipts and has never advised on what warehouse receipts should contain); 167-168 (testifying that he has not been involved with a fraud audit, running a fraud audit, or reviewing fraud audit results). And as the Court held in *Kirby,* "Seeing something and understanding what is seen are different things." (*Kirby* ECF No. 208 at 22.)

GSL also argues, "XPO can disagree with Jacoby's conclusions and can challenge his testimony on cross-examination and through the testimony of its own witnesses. However, the fact that XPO disagrees with Jacoby's opinions does not provide a basis to preclude his expert testimony." (Opp'n at 2.) But this takes too narrow a view of XPO's position, which is not that XPO disagrees with Jacoby, but that he has not crossed the basic expert hurdle in the first instance. And opposing counsel's ability to vigorously cross-examine does not absolve the expert of demonstrating that he is qualified to speak as an expert to begin with. Jacoby should be excluded because this is not a case about "supply chain management," but rather about (1) due diligence in a tire sale and (2) the specific operations of a freight forwarder. Jacoby is not an expert in either.

### C. Jacoby's "Expert" Opinions are Not Based on Reliable Sources

GSL makes no attempt to explain why Jacoby's reliance on indisputably unreliable sources

is not a threshold issue that precludes the admissibility of his opinions. Specifically, Jacoby relies heavily on an anonymous job review website, Glassdoor.com, citing it multiple times in his report (Jacoby Rep. at 13, 14, 22, 27). He also pasted into his report a summary prepared by activist short-seller investor Spruce Point Capital, ***without ever reviewing the actual full report***, and then cites Spruce Point and its principal multiple times (Jacoby Rep. at 17, 18, 23; Jacoby Dep. at 153-155.) Further, he cites to sources seemingly pulled at random from the internet. (Mot. at 5-6.) GSL fails to address these unreliable sources or how they can possibly support expert testimony. When the foundation for an expert's opinions is so fundamentally flawed that counsel cannot make any argument for their reliability, those opinions should not be admitted.

### D. Jacoby's Opinions Are Not "Expert" Opinions

GSL's Opposition makes it apparent that part of the role it seeks to have Jacoby play is as GSL's storyteller, merely recounting deposition testimony and documents, without any expert gloss. But an expert who merely summarizes facts is not providing "expert" testimony at all. This issue, in particular, pervades Jacoby's Rebuttal to XPO's expert, Gerald Sabino. For example, GSL wants Jacoby to testify that Baltagi was not trained, because Jacoby relied "upon the deposition testimony of Ian Oliver that Baltagi was never given training," and that Baltagi was not subject to discipline, because Jacoby relied "on the testimony of Dominick Muzi that he was unaware of anyone at XPO ever being reprimanded." (Opp'n at 9.) This is not an expert providing an opinion based on specialized training or experience in order to help the trier of fact—this is a purported expert repackaging factual testimony as "expert opinion." As such, GSL's argument that "the trier of fact is entitled to weigh Mr. Jacoby's expert opinions" misses the mark—the recitation of facts is not expert testimony in the first instance.[2] (*See* Mot. at 7.)

---

[2] While problematic enough that Jacoby seeks to "expertize" facts, this issue is made

### E. XPO is Challenging Jacoby's Opinions

GSL incorrectly argues that "XPO is not challenging the ultimate opinions offered, presumably as it is obvious such goes to weight rather than admissibility." (Opp'n at 6.) This is false; XPO *is* challenging the admissibility of his opinions, particularly those that are (1) legal conclusions, (2) sheer speculation, and (3) invade the province of the jury. (*See* Mot. at 9-10.) For example, Jacoby opined on the legal sufficiency of Baltagi's independent contractor agreement, XPO's obligations under Sarbanes-Oxley, and that XPO ratified the documents at issue. (Mot. at 10.) Jacoby speculates at length about what various employees may or may not have known, whether others were in cahoots with Adkins, etc. (Mot. at 9 (summarizing repeated instances of speculation.) Jacoby's rebuttal report offers blatant legal conclusions that "GSL reasonably relied on XPO's representations," and "the documents were authorized by XPO since they came from a bonafide XPO employee through an official XPO email account." (Jacoby Rebuttal Rep. at 3.) Jacoby even offers wild legal opinions like XPO should have filed a "restraining order or injunction" to compel Baltagi to update his LinkedIn profile, despite never having been involved in anything even remotely similar. (Jacoby Dep. at 206-208.) Thus, XPO is not challenging the weight of the opinions, but their admissibility.

### F. Conclusion

As set forth in XPO's Motion, and as reiterated herein, Jacoby's opinions and testimony should be excluded in full.

Respectfully submitted,

*/s/ Martha Brewer Motley*
Kimberly Weber Herlihy (0068668)
Martha Brewer Motley (0083788)

---

exponentially worse given Jacobys' incorrect recitation of the facts as he interpreted them, as summarized in XPO's opening motion and which GSL entirely failed to address. (Mot. at 6.)

7

Thomas J. Whaling (0096430)  
Erica M. Rodriguez (0098711)  
Vorys, Sater, Seymour and Pease LLP  
52 East Gay Street, P. O. Box 1008  
Columbus, OH 43216-1008  
Phone: (614) 464-8283  
Fax: (614) 719-5021  
Email: kwherlihy@vorys.com  
mbmotley@vorys.com  
tjwhaling@vorys.com  
emrodriguez@vorys.com  

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 23, 2021 a true and accurate copy of the foregoing Reply brief was sent to counsel of record via the Court's ECF system and to Mr. Baltagi and Mr. Adkins, via email, and will serve on December 27, 2021 via regular mail to:

Afif Baltagi  
2308 Nantucket Drive, Apt. C  
Houston, TX 77057

Jason Adkins  
885 Sternberger Road  
Jackson, Ohio 45640

<u>/s/ Thomas J. Whaling</u>  
Thomas J. Whaling (0096430)