IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GREAT SOUTHLAND LIMITED,**

      **Plaintiff,**    Case No.: 2:17-cv-719

  **vs.**         Judge Sarah D. Morrison

**LANDASH CORPORATION,** *et al.***,**  Magistrate Judge Kimberly A. Jolson

      **Defendants.**

<u>**OPINION & ORDER**</u>

  Several motions *in limine* bring this matter to the Court's attention. Each is decided as noted below.

  **I.**  **STANDARD OF REVIEW**

  A motion *in limine* is a pre-trial mechanism by which the Court can give the parties advance notice of the evidence upon which they may or may not rely to prove their theories of the case at trial. Although the Federal Rules of Evidence do not explicitly authorize a court to rule on an evidentiary motion *in limine*, the United States Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The motions therefore serve "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999).

  To obtain the *in limine* exclusion of evidence, a party must prove that the evidence is clearly inadmissible on all potential grounds. *Luce,* 469 U.S. at 41 n.4.

1

Any motion *in limine* ruling, however, is "no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court, and the district court may change its ruling where sufficient facts have developed that warrant the change." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994). The Court will therefore entertain objections on individual proffers of evidence as they arise at trial, even though the proffered evidence falls within the scope of a denied motion *in limine*. *United States v. Kistner*, No. 2:11-cr-00283, 2013 U.S. Dist. LEXIS 2129, at *4-5 (S.D. Ohio Jan. 7, 2013) (Frost, J.).

## II. XPO'S MOTIONS *IN LIMINE*

### A. ECF No. 233: Motion *in Limine* No. 1 to Preclude GSL from Proceeding on a Negligent Hiring, Supervision, or Retention Claim.

Defendants XPO Logistics, Inc. and XPO Global Forwarding, Inc. (collectively "XPO") argue that GSL's Amended Complaint (ECF No. 144) fails to raise a claim for negligent hiring, supervision, or retention as to XPO's employee, Defendant Afif Baltagi. XPO thus moves for an order precluding evidence or argument as to that "claim" at trial. (ECF No. 233.)

GSL counters its controlling pleading satisfies Fed. R. Civ. P. 8's lenient standard. (ECF No. 238.) In support, GSL highlights the following allegations contained within the Amended Complaint: Baltagi acted negligently while acting within the scope of his employment at XPO; XPO was liable for his negligent actions via respondeat superior; XPO had a duty to "hire, manage, and supervise . . .

2

Baltagi"; and "XPO was negligent in its hiring, management, and supervision of Baltagi . . . ." (ECF No. 144, ¶ ¶ 224-226.)

The Amended Complaint fails to satisfy Rule 8's relaxed standards. The noted allegations equate to nothing more than legal conclusions; absent from the Amended Complaint is "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). Indeed, GSL points to no factual matter within the Amended Complaint addressing: (1) XPO's actual or constructive knowledge of Baltagi's incompetence; (2) XPO's actual or constructive knowledge of Baltagi's propensity to engage in similar tortious conduct; (3) XPO's act of causing GSL's injuries short of simply employing Baltagi; and (4) XPO's alleged negligence proximately causing GSL's injuries, each of which are elements of a negligent hiring, supervision, and retention claim. *Simpkins v. Grace Brethren Church of Delaware*, 5th Dist. Delaware No. 13 CAE 10 73, 2014-Ohio-3465, ¶ 40, 16 N.E.3d 687, 701. *See also Sitton v. Massage Odyssey, LLC*, 1st Dist. Hamilton No. C-190578, 2020-Ohio-4282, ¶ 12, 158 N.E.3d 156, 161. ("plaintiff must show that the employer knew or should have known of the employee's propensity to engage in similar tortious or criminal conduct.") (internal quotation and citation omitted).

In sum, reviewing the Amended Complaint in a light most favorable to GSL, the Court concludes that the pleading does not assert a claim for negligent hiring, supervision, and retention of Baltagi. XPO's Motion to Preclude evidence and testimony at trial regarding such a claim is **GRANTED**. (ECF No. 233.)

3

### B. ECF No. 232: Motion *in Limine* No. 2 to Preclude GSL from Moving on a RICO Conspiracy Claim.

XPO concedes the Amended Complaint sufficiently asserts a claim under 18 U.S.C. 1962(c). But XPO asserts that the Amended Complaint fails to adequately allege an 18 U.S.C. § 1962(d) RICO conspiracy claim so that any RICO conspiracy evidence should be excluded at trial. (ECF No. 232.)  In particular, XPO contends the Amended Complaint's failure to allege that XPO "knowingly joined a conspiracy to violate § 1962(c)" mandates the exclusion of such evidence. *Id.*, PageID 3732.

GSL relies on Count VI of the Amended Complaint, wherein GSL alleges that all defendants "violated RICO – 18 U.S.C. § 1961, *et seq.*", and to paragraph 298, wherein GSL alleges all "Defendants have violated 18 U.S.C. § 1962 by, among other things, being employed or associated, directly or indirectly, in the enterprise and engaging in conduct through a pattern of racketeering activity" to argue the Amended Complaint put XPO on notice of a § 1962(d) claim. (ECF No. 144, PageID 1774 and ¶ 198; ECF No. 239, PageID 4047). GSL's argument fails. Generic reference to a code section containing four subsections fails to put XPO on notice that GSL is bringing a claim under one of the unspecified four sections. Additionally, the Amended Compliant lacks a factual predicate sufficient to sustain a RICO conspiracy claim. Namely, the Amended Complaint does not allege or assert any facts regarding whether Baltagi intended to benefit XPO thorough his actions or that XPO benefitted from the conspiracy. *Trollinger v. Tyson Foods*, No. 4:02-CV-23, 2007 WL 1091217, at *4 (E.D. Tenn. Apr. 10, 2007) (citing *Davis v. Mut. Life Ins. Co.*, 6 F.3d 367, 379 (6th Cir. 1993)).

The Court has reviewed the Amended Complaint in a light most favorable to GSL and concludes that the pleading does not raise a claim for RICO conspiracy under § 1962(d). XPO's Motion to Preclude GSL from Moving on a RICO Conspiracy Claim is **GRANTED**. (ECF No. 232.)

### C. ECF No. 231: Motion *in Limine* No. 3 to Prohibit Plaintiff from Seeking Ponzi Scheme Interest.

GSL borrowed money from seven or eight unidentified investors to fund the Landash deal. (ECF No. 240-1.) As part of its claims against XPO, GSL seeks the amount it loaned Landash—$2.4 million—and the $3,007,627 in interest GSL asserts it has since paid to the investors who loaned GSL the money to fund the Landash transaction. (ECF No. 227, PageID 3135.) XPO moves to prevent GSL's attempt to recoup the interest component, arguing that GSL offers nothing but speculation as to the basis for, and amount of, the interest it seeks. (ECF No. 231, 3393-3396.) GSL counters the interest is recoverable and definitive.

"As a general rule, speculative damages are not recoverable." *Ramsdell v. Ramsdell*, 6th Dist. No. L-12-1113, 2013-Ohio-409, ¶ 18. "An award of damages must be shown with a reasonable degree of certainty and in some manner other than mere speculation, conjecture, or surmise." *Acme Co. v. Saunders & Sons Topsoil*, 7th Dist. No. 10-MA-93, 2011-Ohio-6423, ¶ 57. "Damages are not speculative when they can be 'computed to a fair degree of probability.'" *Id.* (quoting *Allied Erecting Dismantling Co. v. City of Youngstown*, 151 Ohio App. 3d 16, 2002-Ohio-5179, 783 N.E.2d 523, ¶ 65 (7th Dist.).

5

GSL argues that the deposition testimony of Dave Hodgson is concrete proof of its interest damages. It is not. The few selected excerpts of Hodgson's deposition provided to the Court indicate Hodgson created GSL in 2014. (ECF No. 240-1.) But the excerpts do not establish his specific role at the company at the relevant time or his specific involvement with either the alleged investor loans or the Landash deal. *Id*. His testimony therefore lacks foundation. It also lacks specifics. He testifies in general terms about how: GSL raises capital (in a pool, not per deal); all GSL investors sign a contract with GSL for a two-year deal; GSL's investors do not know which GSL investment their money is funding unless they request a specific investment; and GSL "endeavor[s] to offer a fixed income of 20 percent per annum for a bulk or certain-sized investments, and a smaller size is 17 percent per annum" to its investors. *Id*. at 4079.

GSL fails to provide copies of contracts it claims to have had with the relevant investors. GSL also fails to identify the: (1) date of the contracts; (2) specific investors at issue; (3) amount of each investor's investment in GSL generally and the Landash deal specifically; (4) contracts' repayment terms; and (5) contracts' interest rate for repayment. Thus, GSL's right to the interest, as well as the specific amount of interest being sought, is wholly unsubstantiated.

GSL has presented nothing to the Court establishing GSL's right to collect the interest it paid to its investors as damages or allowing such damages to be computed to a fair degree of probability. XPO's Motion to Prohibit Plaintiff from Seeking Ponzi Scheme Interest is **GRANTED**. (ECF No. 231.)

6

D. **ECF No. 229: Motion *in Limine* No. 4 to Preclude GSL from Calling Brad Jacobs or Catherine Friedman as a Witness and to Exclude the Jacoby Supplemental Report.**

Brad Jacobs is XPO Logistics' CEO and Chairman. (ECF No. 192.) Catherine Friedman is his Chief of Staff. *Id.* The Court permitted GSL to depose each on the limited topic of whether they had any knowledge of certain April 2015 e-mails about Star Funding. *Id.* Jacobs and Friedman both testified they did not. XPO now seeks an order prohibiting their personal testimony if subpoenas are successful or the reading of their depositions at trial if not. (ECF No. 229, PageIDs 3284-3285.) XPO further seeks exclusion of the Supplemental Report of one of GSL's experts, Mr. David Jacoby, opining on the testimony of Mr. Jacob and Ms. Friedman. *Id.*, PageID 3285-3286.

GSL wants to use Mr. Jacobs' and Ms. Friedman's testimony about the e-mails to establish that "XPO was negligent in its hiring, supervision, and management of" Baltagi. (ECF No. 241, PageID 4085.) The Court excludes any evidence as to that claim as part of its ruling above. Hence, the testimony is irrelevant and inadmissible under Fed. Rs. Evid. 401 and 402. Furthermore, Mr. Jacoby's Supplemental Report (ECF No. 229-3) pertains only to GSL's negligent hiring, supervision, and management claim. Therefore, it is likewise irrelevant and inadmissible under those same rules and shall not be discussed at trial. XPO's Motion to Preclude GSL from Calling Brad Jacobs or Catherine Friedman as a Witness and to Exclude the Jacoby Supplemental Report is **GRANTED**. (ECF No. 229.)

7

### E. ECF No. 234: Motion to Exclude Expert Testimony of David Jacoby

Mr. Jacoby opines:

- XPO's negligent hiring, supervision, and/or retention of Baltagi "enabled him to facilitate Adkins' fraud against GSL." (ECF No. 234-1, PageID 3818.)

- Baltagi was acting within the course and scope of his employment when he gave Hodgson a tour of XPO Houston in February 2016; executed a warehouse receipt in April 2016 verifying receipt of GSL's tires in Houston; and sent Hodgson an e-mail that same month providing the serial numbers for GSL's tires. *Id*. *See also*, ECF No. 144, PageIDs 1792-1795, 1927-30.

- GSL reasonably relied on Baltagi's representations. (ECF No. 234-2, PageID 3848.)

- XPO Houston was a warehousing facility. *Id*. at 3852.

- XPO did authorize Baltagi's execution of the warehouse receipt and sending of the April 2016 e-mail because Baltagi used his XPO e-mail address when providing both to GSL. *Id*. at 3854.

- Various disputes about the tires' ownership "should have triggered a security audit." *Id*.

- A security audit "would probably have" uncovered the fraud. *Id*. at 3855.

XPO seeks to exclude these opinions under Fed. R. Evid. 702, arguing that Jacoby lacks the requisite knowledge and bases his opinions on unreliable sources. (ECF No. 234.)

    1.    **Federal R. Evid. 702 Framework**

Rule 702 provides:

8

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The rule "imposes a special obligation upon a trial judge to ensure that scientific testimony is not only relevant, but reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 137 (1999) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993)). This basic gatekeeping obligation applies to all expert testimony. *Kumho Tire Co.*, 526 U.S. at 147. But the gatekeeper role

> is not intended to supplant the adversary system or the role of the jury; rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value. *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923-24 (S.D. Ohio 2000) [Sargus, J.].

*Ohio Oil Gathering Corp. III v. Welding, Inc.*, No. 2:09-cv-782, 2010 U.S. Dist. LEXIS 136248, at *15-16 (S.D. Ohio Dec. 9, 2010) (Frost, J.). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) (citation omitted). Accordingly, "Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will

9

assist the trier of fact." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998) (citation omitted). The Court enjoys broad discretion when making that call. *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007).

The Sixth Circuit employs a three-pronged approach in Rule 702 analysis. "First, the witness must be qualified by 'knowledge, skill, experience, training, or education.' Second, the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' Third, the testimony must be reliable." *In re Scrap Metal,* 527 F.3d at 529 (quoting Rule 702). "The party offering the expert testimony has the burden of establishing its admissibility by a preponderance of the evidence." *Id.*, citing *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) and *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

### 2. Knowledge and Experience

"To qualify as an expert under Rule 702, a witness must first establish their expertise by reference to 'knowledge, skill, experience, training, or education.'" *United States v. Higgins*, No. 3:18-cr-186, 2022 U.S. Dist. LEXIS 779, at *7 (S.D. Ohio Jan. 4, 2022) (Rose, J.) (quoting Fed. R. Evid. 702). Additionally, the expert's training and qualifications must relate to the subject matter of the proposed testimony. *Smelser v. Norfolk Southern Railway Co.*, 105 F.3d 299, 303 (6th Cir. 1997). "[T]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351

10

(6th Cir. 1994). Exclusion is proper when "the subject of the testimony lies outside the witness' area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000).

      Mr. Jacoby holds a Bachelor of Science in Finance and Economics, a Master of Business Administration, and a Masters in International Business from the University of Pennsylvania. (ECF No. 234-2, PageID 3857.) His career began at A.T. Kearney, Inc. as a Procurement Logistics and Supply Chain Manager. (ECF No. 251-2, PageID 4509.) There, he managed "engagements in strategic sourcing, transportation, logistics/supply chain optimization" and "[i]mplemented a redesigned [department] store logistics process." *Id*. at 4509-10. Next, he worked for Norbridge, Inc. as a Transport and Logistics Principal for two years. *Id*., at 4509. In that role, he "helped global . . . logistics service providers improve operations . . ." (ECF No. 234-1, PageID 3825.) *Id*.

      Two years later he started Boston Strategies International, Inc., where he has served as President since the company's inception. *Id*. at 3824. In that capacity he consulted for UPS regarding an acquisition of a freight forwarding company; for Chrysler Fiat about auto parts, warehousing, and performance measurements; for CSX concerning freight forwarding; for General Motors re-designing their warehouse receipts and inspection reports; and for FedEx with respect to real estate information systems and shared overhead costs. (ECF No. 251-1, PageID 4371-4375.) Those experiences have exposed him to warehouse receipts and inspection reports and allowed him to interview warehouse managers. (ECF No. 251-1, PageID

11

4372, 4374, 4377). Additionally, he advised a French holding company about "[e]xactly how to do warehousing operations from transportation and receiving through store logistics . . ." although freight forwarding "was not a major part of" that consultancy. (ECF No. 251-1, PageID 4376.) Between one-fourth and one-half of his work has focused on supply chain efficiency. *Id*. at 4378. While he has consulted on a variety of subject areas throughout his career, transportation and logistics has been the most prominent. *Id*. at 4383.

Mr. Jacoby performed organizational studies for FedEx and Iron Mountain. *Id*. at 4379. Such studies "involve writing job descriptions and posting job requisitions, sometimes actively hiring staff on behalf of the company involved, drawing organization charts, explaining the relationship between people and their responsibilities, who should do what exactly and who should report to whom." *Id*.

Mr. Jacoby authored several books on supply chain management. (ECF No. 234-1, PageID 3827.) He presented on the same topic to numerous audiences, and taught graduate-level operations-management courses. *Id*. at 3823.

In sum, Mr. Jacoby has more than thirty years' consulting experience in "supply chain management, operations strategy and performance improvement." (ECF No. 234-1, PageID 3823.) Great Southland has shown by a preponderance of the evidence that Mr. Jacoby's knowledge, skill, experience, training, and/or education satisfy Rule 702's knowledge requirement.

### 3. Relevance

Neither side addresses the relevance of Mr. Jacoby's opinions. *In re Scrap Metal* makes clear that the relevance of Mr. Jacoby's conclusions must be established. This involves considering whether the proffered expert testimony is relevant under Rule 401, which provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue . . . . Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (cleaned up). Under the relevance requirement "there must be a 'fit' between the inquiry in the case and the testimony, and expert testimony that does not relate to any issue in the case is not relevant and therefore not helpful." *United States v. Bonds*, 12 F.3d 540, 555 (6th Cir. 1993). "Whether an opinion 'relates to an issue in the case' or helps a jury answer a 'specific question' depends on the claims before the court. Thus, when analyzing the relevancy of expert testimony, a court should consider the elements that a plaintiff must prove." *Madej v. Maiden*, 951 F.3d 364, 370 (6th Cir. 2020).

Mr. Jacoby's opinions tie into elements of Great Southland's claims for fraud, civil conspiracy, RICO, breach of contract, and negligence/respondeat superior. They are therefore relevant under Fed. R. Evid. 401 and help the jury understand the evidence and determine a fact in issue under Rule 702. But some of Mr. Jacoby's

13

opinions pertain to GSL's excluded negligent hiring, supervision, and/or retention claim; those opinions are irrelevant, would not help the jury, and are excluded.

### 4. Reliability

The next genesis for XPO's request is that Mr. Jacoby's opinions are based on incorrect facts and unreliable sources. This Rule 702(b) argument equates to a reliability attack.

Although *Daubert* identifies several factors addressing a reliability determination, the Court need not consider them here as no scientific or technical expert testimony is at issue. Because the "law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination," the reliability inquiry is flexible. *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). "The task for the district court in deciding whether an expert's opinion is reliable is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). In this regard, the Court "is required to do more than simply take 'the expert's word for it' as part of its gatekeeping function." *Id*.

XPO points out that some of Mr. Jacoby's opinions are based, in part, on anonymous and unverified postings on Glassdoor.com and on a report from Spruce Point Capital Management which is an investment firm that has a short position on XPO's stock. (ECF No. 234, PageIDs 3783-3785.) XPO also argues Mr. Jacoby relies

14

on incorrect facts. *Id.* at 3785-3788. XPO's complaints about Mr. Jacoby's references to, and reliance upon, those sources goes to the weight of his opinions and not their admissibility. Any weaknesses in his methodology should be explored through stringent cross-examination. *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). And the Sixth Circuit "generally permit[s] testimony based on allegedly erroneous facts when there is some support for those facts in the record." *In re Scrap Metal*, 527 F.3d at 530.

In sum, XPO's motion to exclude Mr. Jacoby's opinions (ECF No. 234) is hereby **GRANTED IN PART** and **DENIED IN PART**. The Court deems Mr. Jacoby qualified, but he shall be prohibited from testifying to opinions about GSL's negligent hiring, supervision, and/or retention claim due to irrelevance. However, Mr. Jacoby will be allowed to testify to his remaining opinions, as they are relevant and reliable within the meaning of Rule 702.

### III. ECF No. 230: GSL'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENTS REGARDING PLAINTIFF'S DAMAGES

GSL's lone motion *in limine* first seeks to preclude XPO from arguing that GSL is not entitled to the $3,007,627 in interest GSL asserts it paid to its investors to secure the funds for the Landash loan. (ECF No. 230.) This request is **MOOT** per the Court's ruling above that GSL may not present evidence concerning interest GSL may have paid to its investors for the Landash loan. GSL may, however, pursue the principal amount of the money it loaned Landash as damages.

15

Second, GSL seeks exclusion of argument and evidence regarding damages offset. This ask is **MOOT** per XPO's response that it does not intend to "argue that GSL's damages should be offset by funds that have not been recovered at the time of the verdict." (ECF No. 242, PageID 4099.)

Third, and finally, GSL seeks exclusion of argument about and evidence that damages for GSL's federal and state RICO claims may be apportioned. (ECF No. 230.) The proposed jury instructions and interrogatories do not address joint and several liability or apportionment of liability because if GSL establishes RICO liability as to any of the defendants, joint and several liability is established as a matter of law. Permitting argument and evidence regarding apportionment would therefore do nothing but confuse the issues and mislead the jury. GSL's Motion to Exclude RICO liability apportionment argument and evidence is **GRANTED** under Fed. R. Evid. 403. (ECF No. 230.)

## IV.  CONCLUSION

XPO's Motion *in Limine* No. 1 to Preclude GSL from Proceeding on a Negligent Hiring, Supervision, or Retention Claim is **GRANTED**. (ECF No. 233.)

XPO's Motion *in Limine* No. 2 to Preclude GSL from Moving on a RICO Conspiracy Claim is **GRANTED**. (ECF No. 232.)

XPO's Motion *in Limine* No. 3 to Prohibit Plaintiff from Seeking Ponzi Scheme Interest is **GRANTED**. (ECF No. 231.)

XPO's Motion *in Limine* No. 4 to Preclude GSL from Calling Mr. Brad Jacobs or Ms. Catherine Friedman as a Witness and to Exclude the Jacoby Supplemental Report is **GRANTED**. (ECF No. 229.)

XPO's Motion to Exclude Expert Testimony of Mr. David Jacoby is **GRANTED** in part and **DENIED** in part.(ECF No. 234.)

GSL'S *Motion in Limine* to Exclude Evidence and Arguments Regarding Plaintiff's Damages is **MOOT** in part and **GRANTED** in part. (ECF No. 230.)

**IT IS SO ORDERED**.

                                      s/Sarah D. Morrison
                                      **SARAH D. MORRISON**
                                      **UNITED STATES DISTRICT JUDGE**